TRANSPORT ASSOCIATES, Appellant,

v.

Paul M. BUTLER; Robert L. Whittaker, Acting Director of Special Fund; Richard Campbell, Jr., Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 94–SC–484–WC.

Supreme Court of Kentucky.

Feb. 16, 1995.

William P. Swain, Douglas A. U'Sellis, Boehl, Stopher & Graves, Louisville, for appellant.

Gary S. Logsdon, Jefferson V. Layson, III, Brownsville, for appellee Butler.

Joel D. Zakem, Labor Cabinet—Special Fund, Louisville, for appellee Whittaker.

## OPINION OF THE COURT

Claimant, a truck driver, injured his back while lifting an ink drum at work on January 10, 1990. Thereafter, he complained of leg and back pain. His family physician, Dr. McClure, diagnosed a muscle strain and referred him to Dr. Hubbard, an orthopedic surgeon. Dr. Hubbard diagnosed the condition as a temporary muscle spasm and recommended that claimant return to work. When he examined claimant, in January, 1990, he did not believe that claimant was a candidate for surgery.

Dissatisfied with the prior medical opinions, claimant began treatment with Dr. Malik, another orthopedic surgeon, who diagnosed his condition as spondylolysis and spondylolisthesis. At first, Dr. Malik recommended conservative treatment and advised claimant not to return to work. However, as of April, 1990, claimant's condition had not responded to the treatment. Therefore, upon Dr. Malik's recommendation, claimant was hospitalized, put in traction, and scheduled for spinal fusion surgery.

Because he feared the surgery, claimant contacted Ms. Bright, the rehabilitation specialist assigned to him by the employer's insurance carrier. After consulting with her to determine his options, claimant decided to consult Dr. Madauss, a neurosurgeon, in order to seek a second medical opinion concerning the necessity of surgery. On May 8, 1990, Dr. Madauss noted that claimant had a normal neurological exam and concluded that he did not have a condition that warranted surgery. Dr. Madauss attributed claimant's symptoms to "emotional overlay" and "hys-

terical weakness" and released him to return to work. However, claimant failed to do so.

Ms. Bright's report to the carrier for the period May 30, 1990–June 15, 1990, indicates that she had been unable to reach claimant by telephone since the appointment with Dr. Madauss and that he did not respond to messages she had left. The report also indicates that she had contacted the employer and was informed that claimant had not returned to work, that he had not responded to the employer's telephone calls, and that he had returned to Dr. Malik for treatment. A follow-up call to Dr. Malik's office confirmed that he had seen claimant on May 24, 1990, and had advised him not to return to work for six weeks. Dr. Malik expected him to return for a check-up on July 5, 1990. The report indicates that carrier approval to close the rehabilitation file was obtained "secondary to non-compliance." On August 28, 1990, after he made continuing complaints to Dr. Malik of back and leg pain, claimant consented to surgery, and a partial diskectomy at L4–L5 and a diskectomy and fusion at L5–S1 were performed.

Although claimant believed that the surgery helped him to regain sensation in his legs, the pain continued. Dr. McClure, who examined him in February, 1991, believed that claimant's condition was worse than it had been at the time of the initial injury and assessed a significant impairment. Dr. Hubbard testified that the surgery was unreasonable and unnecessary. Dr. Madauss testified that claimant was disabled as a result of the surgery and that his condition was worse than it would have been without surgery.

The Administrative Law Judge (ALJ) determined that claimant was permanently and totally occupationally disabled and that the disability was attributable to the surgery which was deemed to be "unwarranted and inappropriate." Findings were made that the surgery was performed in an attempt to treat the work-related injury; the employer's carrier terminated the supervision of claimant's progress; and the employer failed to move for the selection of a different physician pursuant to KRS 342.020(3). Therefore, the ALJ determined that any disability resulting from the surgery was compensable.

It was determined that the entire disability resulted from the surgery, and none was attributed to the arousal of a previously dormant condition. Therefore, the award was apportioned entirely against the employer.

The Workers' Compensation Board (Board) affirmed on these issues in a two-to-one decision. In response to arguments raised by the employer, the Board noted that, regardless of whether Ms. Bright bore any agency relationship to the employer, it was undisputed that the employer knew claimant continued to be treated by Dr. Malik even after he was released to return to work by Dr. Madauss. The Board concluded that because the employer knew of claimant's continued treatment by Dr. Malik and failed to seek the remedy provided by KRS 342.020(3), it was liable for any disability attributable to that treatment. There was no indication of prior, active disability. Therefore, as applied to the facts herein, KRS 342.120 and KRS 342.1202 would authorize Special Fund liability only if claimant's disability was in part due to the arousal of his dormant back condition. Because the ALJ determined that all of claimant's disability was attributable to the surgery, there was no basis for Special Fund liability.

The dissent believed that the employer should not be required to pay compensation benefits for disability caused by unnecessary surgery and cited *Powell v. Galloway*, Ky., 229 Ky. 37, 16 S.W.2d 489 (1929). Furthermore, the dissent did not view the employer's failure to invoke KRS 342.020(3) as giving rise to laches and/or estoppel. The employer's knowledge that claimant continued to be treated by Dr. Malik was not the same as knowledge that the surgery would be performed.

The Court of Appeals affirmed the decision of the Board. In its opinion, the court noted that in *Powell v. Galloway*, the court had mistakenly cited Ky.Stats. § 4885 and *Lanham v. Himyar Coal Corp.*, 218 Ky. 55, 290 S.W. 1039 (1927), and that, in fact, disability stemming from negligent medical treatment was a matter of workers' compensation and not the proper subject of a suit against the employer in tort. The court concluded that, regardless of whether an employer partici-

pates in the selection of medical treatment, it is liable for disability due to the aggravation of a work-related injury as a result of the medical treatment. *Elizabethtown Sportswear v. Stice*, Ky.App., 720 S.W.2d 732 (1986) and Larson, *The Law of Workmen's Compensation*, § 13.21(a).

The employer appeals to this Court and asserts that disability attributable to unnecessary and inappropriate surgery by a physician of the worker's choosing and without the employer's knowledge or approval is not compensable. The employer also argues that, because it was unaware that surgery was again contemplated, its failure to move for the selection of a different physician pursuant to KRS 342.020(3) should not be a basis for holding it liable for disability which resulted from the surgery. Finally, the employer argues that the Special Fund should be liable for a portion of the disability award because the injury was superimposed on a preexisting condition. We disagree; hence, we affirm.

In the instant case, well before the surgery was performed on August 28, 1990, the employer and its insurance carrier were aware of Dr. Madauss's opinion that surgery was not recommended in claimant's case. The carrier also knew that Dr. Malik had recommended surgical intervention in April, 1990, and that surgery was not performed at that time primarily due to claimant's fear. Furthermore the record indicates that in early June, 1990, the employer informed Ms. Bright that after Dr. Madauss had released claimant to return to work on May 8, 1990, claimant had returned to Dr. Malik for treatment and that claimant continued to remain away from work pursuant to his recommendation. Under those circumstances and contrary to the employer's assertion, we do not believe it was unforeseeable that if Dr. Malik continued to treat the claimant, unnecessary surgery eventually would be performed. Furthermore, there is no requirement that an injury or its consequences be foreseeable in order to be compensable. Under the circumstances presented herein, we do not believe it was unreasonable for the ALJ to have expected the employer to exercise its right pursuant to KRS 342.020(3) by requesting that a physician other than Dr. Malik be selected to continue treating claimant's condition if the employer did not wish to be responsible for the results of Dr. Malik's treatment.

Because the ALJ determined that it was the unnecessary surgery which caused claimant's total disability, the award was not based, in whole or in part, on a preexisting disease or condition of the back. The employer has not shown that the evidence compelled a finding contrary to that made by the ALJ; therefore, KRS 342.1202 did not apply.

The decision of the Court of Appeals is hereby affirmed.

All concur.