Charles L. MCGILL, Plaintiff–Appellant,

v.

DHL AIRWAYS, INC., d/b/a DHL Worldwide Express Defendant–Appellee.

No. 99–5999.

United States Court of Appeals, Sixth Circuit.

April 11, 2001.

Before DAUGHTREY and CLAY, Circuit Judges; COHN, Senior District Judge.*

OPINION

COHN, District Judge.

## I. Introduction

This is an employment case. Plaintiff–Appellant Charles L. McGill (McGill) appeals the district court's denial of his motion for new trial and for judgment notwithstanding the verdict following a jury verdict in favor of Defendant–Appellee DHL Airways, Inc. d/b/a DHL Worldwide Express (DHL) on McGill's claim of wrongful termination. For the reasons that follow, we will affirm the district court's decision.

## II. Background

### A.

DHL is an airline whose hub is located at the Cincinnati Airport, in Covington, Kentucky. McGill worked for DHL as a flight dispatcher starting in 1994. In September 1996, during a flight from Mexico City to Cincinnati, the flight dispatcher lost radio communication with the pilot for a period of time and the pilot was forced to make an emergency landing in Houston because of a lack of warning of bad weather in the area. Following that incident, McGill reported to his supervisor that the Federal Aviation Regulations (FARs), specifically, FAR 121.99, mandate that pilots and dispatchers have continuous communication at all points during the flight route. Because remote transmitters using VHF were unavailable for use in Mexico, thus causing a "communication gap" between flight dispatchers and pilots, McGill felt that DHL's flights to Mexico were in violation of FAR 121.99. McGill suggested improvements for DHL's communication systems and after receiving insufficient results, began voicing his complaints to others. McGill was subsequently fired for violating a company policy that prohibited tape recording meetings and conversations. McGill contends that he was fired in retaliation for refusing to violate the FARs.[1]

---

* The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

1. McGill's claim is actually for wrongful termination in violation of public policy. Kentucky law establishes a judicial exception to at-will employment for a discharge "contrary to a fundamental and well-defined public policy." ·Boykins v. Housing Authority of Louisville, 842 S.W.2d 527, 529 (Ky.1992). The public policy at issue here is found at KRS 183.100, which states that "No person shall operate any aircraft ... in violation of the air traffic rules promulgated by the cabinet or the Federal Aviation Administration." This includes DHL's Mexico flight. Therefore, McGill claims that to the extent that DHL operated its aircraft without equipment mandated by the FARs, it violated Kentucky's public policy favoring air safety evidenced by KRS 183.100 and to the extent that McGill's termination was due to this violation, his termination was wrongful.

## B.

The district court determined that the jury had to first decide the issue of whether DHL had violated the FAR before considering whether DHL improperly terminated McGill. To enable the jury to determine whether DHL had violated the regulations, the district court, at trial, permitted witnesses to offer their interpretation of the regulations. On the morning of the second day of trial, just before continuing with the testimony of a witness, the district court said to the jury:

> ... All right. I have an instruction to give you at this time, in addition to the preliminary instructions, based on the ruling that I've made after discussion with counsel.
>
> The regulation that was introduced into evidence yesterday [FAR 121.99] has the force of law, it has some general—it has some terms in it and I want to give you an instruction on how to deal with that. The regulation is as follows: Each certificate holder—conducting Domestic or Flag Operations—that's a technical term and that's what it's admitted they were doing—must show that a two-way radio communication system or other means of communication approved by the Administrator is available at points that will ensure reliable and rapid communications under normal operating conditions over the entire route ... either direct or approved point-to-point circuits between each airplane and the appropriate dispatch office and between each airplane and the appropriate Air Traffic Control unit.
>
> All right. Now obviously, that is full of terms of art in this industry—that is, technical terms in this industry—that the Court does not know the meaning of and you don't know—presumably don't know the meaning of, such as "point-to-point communication," "reliable and rap-

id." That's a relative term. "Reliable and rapid" in the aviation industry is different, say, from "reliable and rapid" in the court. If we say something should be done rapidly, we're talking about six months. They might be talking about less.

> So the way that I'm going to handle this, I'll instruct you that this has the force of law and you may consider evidence introduced by the parties, documents, various documents that may be introduced using these terms as to what—and determine what they mean and whether or not the defendant violated the regulations.
>
> This would be similar as if in an automobile case I would instruct you that a driver of an automobile has the duty to operate his automobile in a reasonable and prudent manner having due regard to the circumstances of the highway and other traffic or something like that using general terms. Then you'd have to hear evidence, what were the conditions of the highway? What kind of vehicle was it? Was it a great big truck or a little bitty—a motorcycle? What was it? If it was icy, should they have been going slower than the speed limit? Maybe have evidence on that, experts, if it was a truck or something like that.
>
> So that's what we're going to do here. We may be admitting some documents from the FAA and I'm going to admit them since the author's aren't available, or at least they're not here. Most of these documents I'm going to admit them for purposes of helping you define these terms. You are not bound by the opinions given in there but I'll admit them for the purpose of helping you define these terms, or evaluating the testimony of the witness who might say, "This is my understanding of these terms and here's a letter from the

FAA"... or whoever it may be, or book or manual, or whatever it may be, "... that shows that the way I understand these terms is the correct way." And then somebody else can introduce something and say, "That's not the correct way." An then it would be your decision whether this regulation was violated. That's the way I'm going to handle it. So you may proceed.

(JA 467–469) Except for a few exchanges from the bench during witness testimony, the above comments constitute the whole of the instructions given by the district court to the jury.[2]

At the conclusion of the trial, without repeating anything said earlier in the week,[3] the district court submitted to the jury the following question: "Has the plaintiff, Charles L. McGill, proved by a preponderance of the evidence that defendant was violating FAA regulations in its Mexico City flights between September 1996 and January 1997?" (JA 164, 473). The jury returned the following verdict:

1. Has the plaintiff, Charles L. McGill, proved by a preponderance of the evidence that defendant was violating FAA regulations in its Mexico City flights between September 1996 and January 1997?

    Yes _____      No ✓ _____

    Note: In answering this question you may consider the evidence concerning

the proper interpretation of the regulation....

(JA at 164).

### C.

McGill argues on appeal that the district court erred by: (1) submitting to the jury the issue of whether DHL's operation of its Mexico flights violated the FARs, rather than deciding the issue as a matter of law, and (2) failing to instruct the jury on awarding punitive or exemplary damages.

DHL responds that the district court correctly submitted to the jury the issue of DHL's alleged violation of the FAR because the jury was assessing a violation of law and not interpreting a statute. DHL also argues that the refusal to instruct the jury on punitive damages was appropriate because there was no evidence of outrageous conduct or evil motive.

We review the decision of the district court for error as a matter of law. *Clarksville–Montgomery County School Sys. v. United States Gypsum*, 925 F.2d 993, 1003 (6th Cir.1991) (for a jury instruction challenge, we must decide whether "it states the law with substantial accuracy and fairly submits the issues to the jury.")

### III. Analysis

### A. Federal Airline Regulations

#### 1.

FAR 121.99 provides, in pertinent part, as follows:

(a) Each certificate holder[4] conducting domestic or flag operations must show

---

**2.** We feel compelled at this point to mention our disapproval of the way in which the jury was instructed. Rather than giving the jury comprehensive instructions at the close of the evidence, the district court gave substantively sparse directions intermittently throughout the trial, without a recap at the end. Such an indiscriminate approach places jurors, and consequently the parties, at a disadvantage, inevitably leading to problems such as dis-

played here. However, no matter how legally insufficient we find the jury instructions as a whole, this issue was not appealed and is thus not before us.

**3.** There was no objection from plaintiff on the district court's failure to recap.

**4.** It is undisputed that DHL is a certificate holder.

that a two-way radio communication system or other means of communication approved by the Administrator is available at points that will ensure *reliable and rapid communications, under normal operating conditions over the entire route* (either direct or via approved point-to-point circuits) between each airplane and the appropriate dispatch office, and between each airplane and the appropriate air traffic control unit, except as specified as §§ 121.351(c).[5]

14 C.F.R. § 121.99 (emphasis added).

McGill contends that the phrases "reliable and rapid," "under normal operating conditions." and "over the entire route," must be interpreted, or defined, by the court as a matter of law. McGill further contends that there are FAA opinions that interpret the phrases, and after applying the facts in the case to the interpretations given in the FAA opinions, it must be found as a matter of law that DHL did in fact violate FAR 121.99. McGill therefore says that the trial court erred in submitting the issue to the jury, both by the submission itself, and in the court's failure to define the phrases before submission.

DHL responds that FAR 121.99 does not require interpretation by the court, and in fact, there is no legal precedent from which a judge can define and apply the terms in the regulation as a matter of law. Rather, DHL says that the jury was charged merely with deciding whether DHL violated FAR 121.99. This decision required that the jury acquire a certain amount of knowledge before making such determination, but did not require the jury to interpret FAR 121.99. DHL says that whether a party violated a federal regulation is determined by applying facts to law, and analogizes it to a breach of duty ques-

tion in the context of tort law. Thus, DHL says that whether DHL violated FAA regulations is an issue for the jury.

### 2.

At trial, several witnesses, including experts in the field of aviation, gave conflicting testimony as to their interpretation of FAR 121.99 and their opinion as to whether DHL was in compliance with it. McGill stated that he interpreted the regulation as requiring that there could be "no individuals between [the dispatcher] and the pilot." (JA 307) Pilot John Holt and dispatcher John Burroughs also testified that they believed that FAR 121.99 required the pilot and the dispatcher to be able to speak directly to each other. (JA 344, 351) Each testified that in their opinions, DHL was not complying with FAR 121.99.

McGill also submitted three opinions (in letter form) from the FAA. The first opinion, given in 1964 pertaining to another airline, defined the term "under normal operating procedures" as:

[being] consistent with the current state of the art when the system is operating under normal conditions along the approved route. "Reliable and rapid" communications is not required to be an *absolute condition.* Temporary interruption by conditions other than "normal operating conditions" are not intended to preclude approval of the route. These conditions might include atmospheric or meteorological interference with communication or other operating conditions not anticipated in the normal course of operations.

(JA 207–08). The second opinion, given in 1977 and also pertaining to another airline, stated that the phrase "direct or via point-

---

**5.** FAR 121.351 relates to radio equipment for extended overwater flights that have been pre-approved, which is not relevant here.

to-point circuits," "does not, in our view mean that the dispatcher can talk, in turn to several different persons, each relying information to each and then finally the aircraft." (JA 206). It also said that "considering the speed of modern jet aircraft (8 miles per minute) we do not consider 4, 7 or 13 minutes as being 'rapid'." (JA 204).

The third FAA opinion, given in 1999 in regard to the instant case, stated:

The phrases "between each airplane and the appropriate dispatch office, and between each airplane and the appropriate air traffic control unit" mean that certificate holders must have, or arrange for the use of, two independent communication systems. These certificate holders may not rely upon ATC communications systems to communicate with their dispatch office; nor may they rely upon their dispatch office communication systems to communicate with ATC.

.    .    .    .    .

[T]he 14 C.F.R. section 121.99 phase [sic] "that will ensure reliable and rapid communications, under normal operating conditions" means that ... there can be no gaps in communication between the airplane and the dispatch office, nor between the airplane and the appropriate air traffic control unit *under normal operating conditions*. However, past legal interpretations have held that reliable and rapid communications is not required to be an absolute condition. Temporary interruption by conditions other than "normal operating conditions" e.g., atmospheric interference or a temporary ATC requirement for a flight to operate below the minimum reception altitude, or other operating conditions not anticipated in the normal course of operations, are not intended to preclude approval for operations over certain routes.

(JA 201–02) The 1999 opinion specifically references both the 1964 and the 1977 opinions. A letter written by Robert J. Yaple, Principal Operations Instructor for the FAA, enclosing the 1999 opinion, indicated that DHL was in violation of FAR 121.99.

In response, DHL offered the testimony of Jim Code (Code), McGill's supervisor, and Richard Cozzi (Cozzi), DHL's Vice-president of Operations. Cozzi testified that he disagreed with the FAA opinions, stating that he considered 4, 7, or 13 minutes to be "rapid," (JA 419) he believed that the regulation never specified how communication should occur, (JA 407) and he believed that "point-to-point communication" encompassed communication relayed through Air Traffic Control towers (JA 423). Likewise, Code testified that he also believed that "point-to-point" was the "ability to talk to an Air Traffic Controller in Mexico on a phone and relay messages back to another aviation person in Cincinnati in Dispatch." (JA 360) Both testified that in his opinion, DHL was in compliance with the FAR.

DHL also heavily stressed at trial that during the relevant events, it had been in contact with the FAA for guidance, and the FAA never cited it for a violation. Moreover, Cozzi testified that just days before the trial, Cozzi received a letter from the FAA rescinding Mr. Yaple's letter which had indicated that DHL was not in compliance. No explanation, however, was given for the reason for recission. McGill replies that the reason the FAA never found DHL to be violating FAR 121.99 was because DHL did not disclose to it all the pertinent information. Moreover, McGill says that simply because DHL was not given a citation, does not mean that it was in compliance.

The meaning of FAR 121.99 was hotly disputed at trial. Despite McGill's insis-

tence otherwise, the evidence submitted by the parties simply provided the context for the jury to determine how to apply the regulation's terms to the facts, as the jury found them.

In *In re Air Crash Disaster*, 86 F.3d 498 (6th Cir.1996), cited by both parties, we held that expert testimony was unnecessary on the issue of whether the airline's crew violated FAA maintenance regulations. In that case, like here, both sides provided such a miscellany of facts and experts at trial, we concluded that "by the end of it, the jury had a substantial amount of 'expertise' of its own." *Id.* at 524. We held that "the jury, based upon ordinary everyday experience and their presence for eighteen months at trial, could reasonably have found that Northwest's crew failed to execute the pre-flight cockpit checklist properly, and deliberately pulled the CAWS circuit breaker." *Id.*

In so holding, we endorsed the airline's argument that "every day, jurors throughout this country are asked-indeed, expected-to decide, without expert assistance, whether a party violated federal laws or regulations." *Id.* at 523 (citing *Farmland Indus. v. Frazier–Parrott Commodities, Inc.*, 871 F.2d 1402, 1409 (8th Cir.1989), *Stissi v. Interstate & Ocean Transp. Co.*, 765 F.2d 370, 376 (2d Cir.1985), *Payne v. A.O. Smith Corp.*, 627 F.Supp. 226, 228 (S.D.Ohio 1985)). Here, that is exactly what the jury was asked to do.

Despite the deficiencies in the jury instruction noted previously, we cannot say that the submission of the issue to the jury itself was in error. The district court properly submitted the issue of whether DHL violated the FARs to the jury.

### B. Punitive damages instruction

McGill's second assignment of error is the district court's failure to instruct on exemplary or punitive damages. However, given our decision to affirm the district court on the jury instructions, we need not address the issue of exemplary or punitive damage instructions.

### IV. Conclusion

For the reasons stated above, we AFFIRM the district court's decision.