**ELIZABETHTOWN SPORTSWEAR, Appellant,**

v.

**James STICE, Administrator of Estate of Cinthia Ann Stice, and Workers' Compensation Board of Kentucky, Appellees.**

Court of Appeals of Kentucky.

Dec. 5, 1986.

John L. Arnett, Elizabethtown, for appellant.

John Bland, Jr., Elizabethtown, for appellees.

Before HAYES, C.J., and HOWERTON and REYNOLDS, JJ.

HAYES, Chief Judge:

The single question at issue in this appeal is whether the evidence before the Workers' Compensation Board compelled a finding that the death of Cinthia Stice was directly related to a compensable injury and thus death benefits must be awarded. We are in complete agreement with the trial judge that the evidence does compel such a finding.

Mrs. Stice suffered a work-related back injury in June, 1983 after which she received treatment for recurring pain up to July, 1984 when she was hospitalized for a lumbar myelogram. Within twenty-four hours of this procedure, Mrs. Stice lapsed into a coma and she died on July 28, 1984. An autopsy was performed but the record does not contain the results or conclusions reached by the pathologist except through the testimony of the treating physician who was permitted to give the results of the report from his records without objection. The Board, without explanation, denied death benefits, presumably on the basis that Mrs. Stice's death certificate listed the cause of death as "respiratory failure due to circulatory failure due to brain stem infarction." However, the only medical evidence before the Board clearly showed that the myelogram was treatment for Mrs. Stice's work-related injury and that her death was caused by an allergic reaction to the dye used in that procedure. The hospital records from Hardin Memorial fully support that conclusion. There was no evidence from which the Board could conclude otherwise. Dr. Malik, the treating physician, testified that the severe allergic reaction to the dye caused the problems that are listed as cause of death on the death certificate.

The trial judge reversed the Board's decision and rendered a well-reasoned opinion which we hereby adopt in part as our own:

"Despite this uncontradicted medical testimony, the Board declined to award death benefits to James Stice, Mrs. Stice's widower and the Appellant herein. No explanation was given for this denial, except for two sentences contained in paragraph 2 of the Opinion, viz:

'... Decedent died at the certified cause of respiratory failure on July 28, 1984. Decedent was survived by plaintiff, her non-dependent husband, and no minor children.'

■ "The dependency or nondependency status of a widower is immaterial in a claim for death benefits under KRS 342.750(1)(a). *See also* KRS 342.075. That was not always the case. KRS 342.070 (Repealed, Acts 1972, ch. 78, sec. 36); KRS 342.075 (Amended, Acts 1974, ch. 386, sec. 60). (Chapter 386 of the 1974 Kentucky Acts is entitled "An Act Relating to Equal Rights for Men and Women.")

■ "The introduction of a death certificate creates a presumption which, if not rebutted or explained, is sufficient to maintain the proposition and to require a judgment based on the cause of death stated therein. *Kirkshouse v. Eastern Kentucky University*, Ky., 501 S.W.2d 581, 582 (1973). In this case the Board lifted part of the official cause of death from the death certificate and ignored the rest.

■ "There is no discernible inconsistency between the perfunctory cause of death statement on the death certificate and the more detailed explanation in the testimony of Dr. Malik. So the opinions of Dr. Malik and Dr. Allen that death resulted from an allergic reaction to the dye used in the myelogram is uncontradicted, as is Dr. Malik's opinion that the myelogram was a necessary procedure for diagnosis and treatment of Mrs. Stice's work-related injury. When a causal relationship between injury and death is not apparent to laymen, the question is one properly within the province of medical experts and the Board may not disregard the medical evidence. *Mengel v. Hawaiian-Tropic*, Ky.App., 618

S.W.2d 184 (1981); *see also Hush v. Abrams,* Ky., 584 S.W.2d 48 (1979).

■ "Professor Larson tells us that it is now uniformly held that aggravation of the primary injury by necessary medical or surgical treatment is compensable. He cites numerous examples, including exacerbation of a claimant's condition, or death, resulting from antibiotics, antitoxins, sedatives, pain-killers, anesthesia, electrical treatments, or corrective or exploratory surgery. A. Larson, *Workmen's Compensation Law,* Vol. 1, sec. 13.21 (1985).

"KRS 342.020(3) provides:

'... No action shall be brought against any employer subject to this chapter by any person to recover damages for malpractice or improper treatment received by any employee from any physician, hospital or attendant thereof.'

"This statute has been interpreted to mean that a civil action cannot be brought against the employer for damages caused by a physician's malpractice or improper treatment, not that a claim for worker's compensation benefits cannot be brought by the employee to recover for additional disability resulting from treatment which aggravates a work-related injury. *McCorkle v. McCorkle,* Ky., 265 S.W.2d 779 (1954). As pointed out by Appellee, the treating physician in *McCorkle* was selected by the employer. And in *Black Mountain Corp. v. Middleton,* 243 Ky. 527, 49 S.W.2d 318 (1932), the employee's injury from an x-ray burn occurred during treatment at a hospital owned by the employer and by a doctor who was on the employer's payroll.

"In *Pond Creek Collieries Co. v. LaSantos,* 307 Ky. 866, 212 S.W.2d 530 (1948), the employer claimed the employee injured his hip when he fell out of a hospital bed while being treated for work-related injuries. The employee claimed and the Board found that the hip was injured in the work-related accident that required the hospitalization. On appeal, it was held that even '... if the hip fracture was not sustained in the fall from the hoist car, it occurred during treatment in such a manner as to constitute in

effect an aggravation of the original injuries. ... Under such circumstances, even if his hip was fractured when he fell from or beside his hospital bed, this occurred during his medical treatment at a time when he could not be held accountable for his acts, and as a direct and proximate result of the original injury suffered in [a work related accident].' *Id.* 212 S.W.2d at 532. Appellee attempts to distinguish *Pond Creek* because the employee was suffering severe shock and was emotionally unbalanced when he fell out of bed. But how could Mrs. Stice be held accountable for the selection and administration of the fatal myelogram dye in this case? She had a right to submit herself to what is usually a routine diagnostic procedure recommended by her physician. If she had not done so, Appellee could claim that compensation should be denied for her failure to follow competent medical advice. KRS 342.035; *Gennett Lumber Co. v. Sizemore,* Ky., 441 S.W.2d 429 (1969). [But at least she would still be alive.]

"On the basis of the uncontradicted testimony in this case, the Board should have awarded death benefits to the widower pursuant to KRS 342.750(1)(a)."

The judgment of the Hardin Circuit Court is affirmed.

Further, pursuant to 2.(a) of the Order designating the Case as a Special Appeal, the application of CR 76.20 and CR 76.32, as well as other appropriate Rules of Civil Procedure pertaining to further appellate steps, are reinstated effective the date of this opinion.

All concur.