**Karen C. BOYKINS, Movant,**

v.

**HOUSING AUTHORITY OF LOUISVILLE, Respondent.**

No. 92–SC–242–DG.

Supreme Court of Kentucky.

Nov. 19, 1992.

As Amended Dec. 23, 1992.

A. Thomas Johnson, Louisville, for movant.

Richard H. Nash, Jr., Louisville, for respondent.

STEPHENS, Chief Justice.

The primary issue we decide on this appeal is whether an employer's firing of a terminable-at-will employee for filing suit against the employer, on a matter not related to the employment, is violative of Section 14 of the Kentucky Constitution.

Karen C. Boykins was employed as an executive secretary by the Housing Authority of Louisville (hereinafter HAL). Nearly one year after her infant son was injured in an apartment owned, operated and managed by HAL, Boykins, as next friend of her infant son, filed suit against HAL alleging negligence. Approximately four months later Boykins was discharged from HAL. For the purpose of this appeal we assume, as was stipulated for summary judgment, that the discharge of Boykins was in retaliation for filing suit against HAL.

Finding that the termination of Boykins was not contrary to public policy evidenced by a constitutional or statutory provision, the Jefferson Circuit Court granted summary judgment for HAL. The Court of Appeals affirmed the trial court's ruling on Boykins' discharge under state common law, but remanded the case for consideration of Boykins' claim under 42 U.S.C. § 1983 which the trial court had failed to address. The Court of Appeals determined that Boykins' discharge did not fall within any statutory or constitutional public policy exception to the terminable-at-will doctrine. Because the legislature had not established a policy on retaliatory discharge, the Court of Appeals reasoned that it was inappropriate for it to do so. We affirm the Court of Appeal's decision.

■ We first look at whether KRS 61.-102, the so-called "Whistle Blower" statute, is applicable in this case. KRS 61.102(1) provides that:

*No employer shall subject to reprisal, or directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any employe who in good faith reports, discloses, divulges, or otherwise brings to the attention of the attorney general, the auditor of public accounts, the gener-*

al assembly of the Commonwealth of Kentucky or any of its members or employes, the legislative research commission or any of its committees, members or employes, the judiciary or any member or employe of the judiciary, any law enforcement agency or its employes, or any other appropriate body or authority, *any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, or endangerment of public health or safety.* No employer shall require any employe to give notice prior to making such a report, disclosure, or divulgence. (Emphasis added.)

Boykins argues that her suit against HAL as the next friend of her son was, in essence, a report of information regarding mismanagement and endangerment of public health and safety by HAL. Boykins contends that her discharge was a direct reprisal for making such disclosures.

KRS 61.102 was designed to protect employees from reprisal for the disclosure of violations of the law. Thus the name "Whistle Blower" statute. The lawsuit filed on behalf of Boykins' son does not fall within this category. The gravamen of that suit was not intended as a report of information regarding any alleged mismanagement or endangerment of public health and safety by HAL, but was rather a simple negligence action. The narrowly drafted purpose of KRS 61.102 reveals no legislative intent to encompass the action of filing suit in the circumstances presented before us today.

The primary issue that we now decide is whether the "open-courts" provision in Section 14 of the Kentucky Constitution creates an exception to the terminable-at-will doctrine solely as applied to the facts before us. We have discussed the terminable-at-will doctrine at length in *Firestone Textile Company Division v. Meadows,* Ky., 666 S.W.2d 730 (1983) and *Grzyb v. Evans,* Ky., 700 S.W.2d 399 (1985).

In *Firestone* the appellant was employed at Firestone Textile Company when he suffered a back injury which required him to be off work for a substantial period of time. Thereafter appellant was first assigned light duties, then he was assigned duties beyond his capacity and finally he was terminated for seeking worker's compensation benefits.

■ In *Firestone* we embraced *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834 (1983), to establish the limitations on "any *judicial exceptions* to the employment-at-will doctrine." (Emphasis added.) 335 N.W.2d at 835. The limitations are that:

(A)n employee has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law.... The public policy must be evidenced by a *constitutional or statutory provision.* (Emphasis added.)

*Firestone* at 731 (quoting *Brockmeyer,* 335 N.W.2d at 840.).

The Workers' Compensation Act has no specific provisions restricting an employer from discharging an employee for the employee's exercise of his rights under the Workers' Compensation Act. However, in *Firestone* we found that implicit in the Workers' Compensation Act "is a public policy that an employee has a right to be free to assert a lawful claim for benefits without suffering retaliatory discharge." *Firestone* at 732.[1]

The case before us today is distinguishable from *Firestone* in that herein there is no statutory or constitutional provision which explicitly or implicitly creates a public policy which prohibits retaliatory discharge.

---

1. The policy of KRS 342.395 is that employees should be free to accept or reject coverage without coercion by their employers. KRS 342.335 states that employees should not be deceived into foregoing lawful claims for benefits or accepting less than is due them.

The most recent case in which we construed the terminable-at-will doctrine is *Grzyb v. Evans,* Ky., 700 S.W.2d 399. In *Grzyb* the respondent filed suit against his hospital employer alleging that he was wrongfully discharged because he had fraternized with a female hospital employee. Respondent contended that he had a cause of action under the freedom of association doctrine and under employment discrimination.

We emphasized that a cause of action for retaliatory discharge must involve public policy which is "clearly defined by statute and directed at providing statutory protection to the worker in his employment situation." *Grzyb* at 400. Holding that the First and Fourteenth Amendments do not, per se, provide a cause of action against employers for wrongful discharge, we held that respondent's complaint failed to state a cause of action. *Id.* at 402.

■ In *Grzyb* we adopted a caveat to the *Firestone* decision. We stated that there exist two situations where the discharge of an employee violates fundamental public policy even absent explicit legislative statements prohibiting the discharge. In effect, we judicially created a public policy. The two situations described are:

[f]irst, "where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment." Second, "when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment."

*Grzyb* at 402 (quoting *Suchodolski v. Michigan Consolidated Gas Co.,* 412 Mich. 692, 316 N.W.2d 710, 711–712 (1982).)

■ The question we must ask is whether in this specific case the employer had the right to discharge an employee who brought private litigation against the employer seeking damages from an incident not related to her employment. We answer the question in the affirmative.

In the case before us today there is no fundamental and well-defined public policy evidenced by existing law, as required by *Firestone.* Nor does either exception outlined in *Grzyb* apply.

Boykins argues that Section 14 of the Kentucky Constitution evidences public policy. She contends that HAL's retaliatory discharge was punishment for exercising her constitutional right to have the courts open to her pursuant to Kentucky Constitution Section 14.

Section 14 states that:

All courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay.

In *Ludwig v. Johnson,* 243 Ky. 533, 49 S.W.2d 347, 351 (1932) the Court stated that

[t]he imperative mandate of section 14 is that every person, for an injury done him in his person, shall have remedy by due course of law.... The Constitution guarantees to him his right to a day in court for the purpose of establishing the alleged wrong perpetrated on him and recovery of his resultant damages.

Section 14 is a mandate *to the government* to provide courts open to all for appropriate judicial remedy. *Ludwig v. Johnson, supra,* and other cases applying the protection afforded by Section 14, address statutes limiting or barring access to courts, not the countless pressures that might otherwise constrain the decision to sue. *See, e.g., Perkins v. Northeastern Log Homes,* Ky., 808 S.W.2d 809 (1991); *McCollum v. Sisters of Charity,* Ky., 799 S.W.2d 15 (1990); and *Saylor v. Hall,* Ky., 497 S.W.2d 218 (1973).

Section 14 has nothing to do with employment rights as such. There is no employment-related nexus between the constitutional policy stated in Section 14 and Boykins' discharge. When Boykins filed suit against HAL on behalf of her infant son she found the court's doors open to her.

We stated in *Firestone* that "[e]mployers as a group have a legitimate interest to protect by having the cause of action for wrongful discharge clearly defined and suitably controlled." *Firestone* at 733.

Boykins, much like the respondent in *Grzyb*, has stated no cause of action because there is no well-defined public policy evidenced by a constitutional or a statutory provision which prohibits HAL from discharging her in retaliation for filing suit against HAL.

For the foregoing reasons, the Court of Appeals' decision is affirmed.

LAMBERT, LEIBSON, REYNOLDS and SPAIN, JJ., concur.

COMBS, J., concurs in part and dissents in part.

WINTERSHEIMER, JJ., dissents in a separate dissenting opinion. COMBS, J., joins in this dissent in regard to the Section 14 discussion.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because K.R.S. 61.102, the so-called "Whistle-blower Statute" is applicable to this situation and Section 14 of the Kentucky Constitution is also applicable.

K.R.S. 61.102 provides in pertinent part that no employer shall discriminate against any employee who brings to the attention of the Attorney General or any member or employee of the judiciary or any law enforcement agency or any other appropriate body of authority any facts which relate to the endangerment of the public health or safety. This lawsuit, although on behalf of her son, is essentially a report of information regarding claims of mismanagement and endangerment of the public health and safety by the Housing Authority. Boykins contends that her discharge was a direct reprisal for making such disclosures.

The statute in question should be broadly applied and interpreted so as to effectuate the purpose of the statute. The concept of open courts embodied in Constitution § 14 would be a hollow right if you lose your job as a result of availing yourself of the court system and the whistle-blower law. I believe there is a fundamental and easily discerned public policy as expressed by the legislature in the whistle-blower statutes. In my view, the statute clearly protects public employees from any reprisal for dis-closing violations of the law or dangers to the public health and safety. Certainly, the government or agents of the government must set a good example. The government should never be exempt from application of the law, otherwise the public's confidence in the credibility of the governmental authority is severely weakened.

If a public employee cannot act so as to file a lawsuit which publicly reports alleged improper management or maintenance in his or her own agency for fear of losing his or her job, there is a clear injustice. The employment at will doctrine should not be allowed to be a shield by any government agency to protect it from the responsibility for its acts.

The decision of the Court of Appeals should be reversed and the matter should be remanded for trial on the merits.

COMBS, J., joins in this dissent in regard to the Section 14 discussion.