Linda S. WYMER and Gary E. Wymer, Appellants,

v.

JH PROPERTIES, INC., d/b/a Jewish Hospital, Shelbyville; Eric Novosel; Wanda Moore; Lori Fryrear; Debbie Molnar; Carol Hawes; and John Kurnick, Appellees.

No. 1999–SC–1133–DG.

Supreme Court of Kentucky.

May 24, 2001.

Rehearing Denied Aug. 23, 2001.

Gregg Y. Neal, Neal & Davis, PLLC, Shelbyville, for appellants.

Jon L. Fleischaker, Cheryl R. Winn, Dinsmore & Shohl, Louisville, C. Alex Rose, Russell H. Saunders, Frank Miller, Jr., Karen L. Keith, Weber & Rose, P.S.C., Louisville, Gary W. Anderson, Louisville, Timothy P. O'Mara, Dennis D. Murrell, Middleton & Reutlinger, Louisville, for appellees.

WINTERSHEIMER, Justice.

This appeal is from an opinion of the Court of Appeals which affirmed a summary judgment of the circuit court which had dismissed the Wymer complaint against all defendants.

The questions presented are whether Workers' Compensation is the exclusive remedy available to Wymer; whether the employment at-will doctrine in Kentucky should be modified and whether the employment related claims should be reinstated.

Linda Wymer had worked for Jewish Hospital, Shelbyville, which is owned by JH Properties, Inc., for 16 years as an operating room technician. In 1993, she was kicked in the shoulder by a patient who was coming out of anesthesia. She sought medical attention from an orthopedist with whom she had worked. He treated her conservatively and took her off work for two weeks. Her shoulder problems did not improve and she had surgery in June of 1994. Her surgeon recommended physical therapy and she went to the Jewish Hospital therapist in Shelbyville because of its proximity to her home. Unfortunately, the physical therapist employed by Jewish Hospital tore her deltoid muscle from her shoulder during the course of the treatment. As a result she was severely injured and her left arm and shoulder became totally useless and she was in constant pain.

Wymer returned to work at Jewish Hospital performing clerical duties. She underwent a second surgery for the purpose of reattaching her deltoid muscle in January of 1995. Following this surgery, she

worked in the surgical unit as a clerk in a position that had been created for her.

Wymer applied for workers' compensation benefits and subsequently filed a medical negligence lawsuit against the hospital and the therapist on June 14, 1995. On July 11, 1995, she was told by the Director of Human Resources of the hospital that because she could no longer function as an ORT in the surgical unit, her employment would end unless she found other employment for which she was otherwise qualified within the hospital system before July 19. An appointment was made to discuss further employment opportunities on July 13, and Wymer brought her attorney with her to the meeting. The hospital refused to meet with Wymer unless her attorney was not present and she refused to meet with the hospital unless counsel was present. She was terminated on July 19.

Wymer amended her complaint in circuit court to add claims of wrongful discharge, outrage, defamation, false light, disability discrimination, fraud, promissory estoppel and breach of implied contract. The circuit court granted a summary judgment for all defendants, ruling that the negligence claims were preempted by the Workers' Compensation Act; that her tort claims were preempted because they occurred during her employment, and in any event they were not supported by the facts. The Court of Appeals affirmed the result, holding that the dual capacity doctrine did not apply because of the Workers' Compensation Law. This Court accepted discretionary review.

## I. Negligence Claim

The Court of Appeals affirmed the summary judgment issued by the circuit court which dismissed the negligence action against Jewish Hospital and therapist Novosel based on its interpretation of *Borman v. Interlake, Inc.*, Ky.App., 623

S.W.2d 912 (1981), which held that the Workers' Compensation Act prohibited the application of the dual capacity doctrine. KRS 342.690. The *Borman* court said that the language of the statute demonstrated an intent to maintain the exclusivity of the remedy principle intact.

Jewish Hospital and Novosel rely on KRS 342.690(1) which states:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to employee. . . .

■ Exemption from liability provided an employer by the statute also extends to employees of the employer. *Fireman's Fund Insurance v. Sherman & Fletcher*, Ky., 705 S.W.2d 459 (1986). Generally an employer is responsible for additional disability resulting from the aggravation by necessary medical or surgical treatment. *Elizabethtown Sportswear v. Stice.*, Ky. App., 720 S.W.2d 732 (1986). *See also* Larson, *Workers' Compensation Law* § 13.21 (1990).

In this case, there were two distinct injuries. The work related injury occurred in 1993 when Wymer suffered an injury to her shoulder as a result of a patient kicking her when coming out of anesthesia. The second injury occurred during physical therapy in 1994 when the therapist tore the deltoid muscle from her shoulder. The medical malpractice injury was not in the course and scope of her employment. This case is factually different from *Borman, supra*. *See also* KRS 342.0011; *Rogers v. Vermont American Corp.*, Ky.App., 936 S.W.2d 775 (1997).

When she was first injured, Wymer chose her own doctor and accepted the recommendation of that physician for a surgical treatment. Later, her physician

referred her to physical therapy at Jewish Hospital in Shelbyville, which was the closest physical therapy available. Jewish Hospital did not select any of the physicians involved, nor did it require her to have physical therapy in Shelbyville. The medical negligence claimed by Wymer does not attempt to sue Jewish Hospital in a dual capacity but rather for a separate and distinct incident which occurred to her. Wymer made her own choice of physician and therapist and her employer had no input in these decisions.

The circuit court did not consider the implication of KRS 342.020(7), where the employer can apply to the ALJ for relief to choose a healthcare provider if it is dissatisfied with the progress of the employee. The facts in this case are clearly distinguishable from *Borman* and that case does not provide the authority to prevent the negligence claim by Wymer.

Similar decisions have been reached by other jurisdictions. *Wright v. State*, 639 So.2d 258 (La.1994), held that a medical malpractice claim for improper hernia repair necessitated by work injury was not barred by workers' compensation. *Tatum v. Medical University of South Carolina*, 335 S.C. 499, 517 S.E.2d 706 (1999), noted the distinction that the employee was not working in the capacity for which she was employed when she was injured by the alleged malpractice. *See* William J. Appel, Annotation, *"Dual Capacity Doctrine" as basis for employee's recovery for medical malpractice from company medical personnel*, 73 A.L.R.4th 115, 1989 WL 571975 (1989). *See also* Michael A. Disabatino, Annotation, *"Dual Capacity Doctrine" as basis for employee's recovery from employer in tort*, 23 A.L.R.4th 1151, 1983 WL 190818 (1983).

*McCorkle v. McCorkle*, Ky., 265 S.W.2d 779 (1954), *Black Mountain Corp. v. Middleton*, 243 Ky. 527, 49 S.W.2d 318 (1932), *Powell v. Galloway*, 229 Ky. 37, 16 S.W.2d 489 (1929) and *Elizabethtown Sportswear, supra*, support the argument that the crucial issue is whether the employer chose the medical provider who caused the alleged injury. In these cases the employer selected or helped select the hospital or doctor. That is not the situation here.

■ This Court reverses the opinion of the Court of Appeals in regard to preemption by the Workers' Compensation Act of the medical negligence claims and remands this aspect of the case to the circuit court for trial or other appropriate action consistent with this opinion. We consider the claims arising from the alleged wrongful discharge later in this Opinion.

## II. Employment at Will

■ Ordinarily an employer may discharge an at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible. *Production Oil Co. v. Johnson*, Ky., 313 S.W.2d 411 (1958); *Scroghan v. Kraftco Corp.*, Ky.App., 551 S.W.2d 811 (1977). There are limitations on the at-will doctrine to provide protection from abuses. *Firestone Textile Co. Division v. Meadows*, Ky., 666 S.W.2d 730 (1983) and *Grzyb v. Evans*, Ky., 700 S.W.2d 399 (1985), recognizes a cause of action when an employee is terminated in contravention of statutory or constitutional provisions. The *Firestone* doctrine was codified in KRS 342.197(1) insofar as it provides that no employee shall be harassed, coerced, discharged or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under the Workers' Compensation Act. *See also* KRS 61.102, the Whistleblower protection for public employees, and the Equal Opportunity Employees Act in KRS 207.150 which prohibits an employer from discharging an individual with

disabilities unless a disability restricts that individual's ability to engage in a particular job or occupation for which he or she is eligible. The creation of additional exceptions to the at-will doctrine has been rejected by this Court in *Boykins v. Housing Authority of Louisville*, Ky., 842 S.W.2d 527 (1992).

■ Wymer cannot validly claim that she was discriminated against due to her disability because she acknowledges that she was unable to perform her former job duties. Thus, the circuit judge properly dismissed her disability discrimination claim. We find no remedy in the Kentucky Civil Rights Act, KRS 344.020(1)(b), which protects individuals from discrimination.

There is no breach of an implied contract of employment in this matter. *Cf. Firestone, supra; Shah v. American Synthetic Rubber Corp.*, Ky., 655 S.W.2d 489 (1983), is not applicable in this situation. The circuit judge correctly entered summary judgment in favor of the employer in regard to the terminable-at-will issue.

### III. Summary Judgment— Wrongful Discharge

■ We have divided our analysis of the summary judgment portion of this case into the medical malpractice section and the claims arising from the allegations of wrongful discharge. We have already reversed the summary judgment as to the medical malpractice issues and now consider the wrongful discharge portion.

■ It has long been held that CR 56.03 provides that summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. A well-supported motion for summary judgment can terminate litigation when, as a matter of law, it appears that it would be impossible for the responding party to produce evidence at trial warranting a judgment in its favor. *Steelvest, Inc. v. Scansteel Service Center*, Ky., 807 S.W.2d 476 (1991); *see also Paintsville Hospital v. Rose*, Ky., 683 S.W.2d 255 (1985). It should be noted that this Court in *Welch v. American Publishing Co.*, Ky., 3 S.W.3d 724 (1999), clarified the situation by stating that *Steelvest* did not repeal CR 56.

■ Here, there is no evidence in the record which support the argument that the hospital retaliated against Wymer by discharging her for pursuing the workers' compensation claim. Clearly, KRS 342.197 protects workers from being harassed, coerced, discharged or discriminated against for pursuing a workers' compensation claim in this type of situation. The party opposing summary judgment cannot rely on their own claims or arguments without significant evidence in order to prevent a summary judgment. *See Harker v. Federal Land Bank of Louisville*, Ky., 679 S.W.2d 226 (1984), an age discrimination case in which the specific issue was whether the circuit court committed reversible error in ruling there was no genuine issue as to any material fact. All doubts must be resolved against the movant. In this case, the evidence demonstrates that the hospital terminated the employment of Wymer on the basis that she could no longer perform the duties of her position as an operating room technician. Her work related shoulder-injuries limited her ability to perform certain physical tasks which were essential to the operating room duties. Wymer admitted that there was no available position which she could perform.

■ Wymer was terminated because she could not work and not because she was disabled. The record indicates that Wymer could not perform the essential duties of any position within the hospital

system, with or without reasonable accommodation. Reasonable accommodation does not include creating a new job. *See Magel v. Federal Reserve Bank of Philadelphia*, 776 F.Supp. 200 (E.D.Pa.1991), *affirmed in 5 F.3d 1490 (3rd Cir.1993)*.

The United States Sixth Circuit Court of Appeals has determined that an employer has no obligation under disability discrimination to accommodate a disabled person beyond reasonable accommodation. *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719 (6th Cir.2000). In addition, there is no evidence in the record to support the claim that her employment was terminated because she filed a medical negligence lawsuit against the hospital. *See Boykins, supra.*

The circuit court properly granted the summary judgment with regard to claims of false light, intentional infliction of emotional distress or outrage, fraud, promissory estoppel and defamation.

 The trial court properly dismissed the claim for breach of implied contract resulting from her termination because she was an at-will employee and thus the hospital could terminate her at any time. Her discharge was not for refusal to break the law or for exercising her employment related rights.

Accordingly, this Court affirms so much of the Court of Appeals decision as relates to the employment at-will termination and the claims arising from such termination. The decision of the Court of Appeals and the circuit court regarding the dismissal of medical malpractice claims is reversed and the matter is remanded to the circuit court for trial or other appropriate disposition.

LAMBERT, C.J., GRAVES, KELLER, STUMBO and WINTERSHEIMER, JJ., concur.

COOPER, J., files a separate opinion, concurring in part and dissenting in part, in which JOHNSTONE, J., joins.

COOPER, Justice, concurring in part and dissenting in part.

I concur with the majority opinion insofar as it affirms the summary dismissal of Linda Wymer's claim for wrongful discharge. I dissent insofar as it reverses the summary dismissal of her claim for common law negligence. The issue is whether that claim is precluded by the so-called "exclusive remedy" provision of the Workers' Compensation Act.

Wymer was employed by JH Properties, Inc., d/b/a Jewish Hospital ("Jewish"), as an operating room technician. She was initially injured on March 23, 1993 when she was kicked in the left shoulder by a patient awakening from anesthesia. It is undisputed that this injury was work-related and covered by Jewish's workers' compensation self-insurance coverage. KRS 342.340(1). At the time of Wymer's injury, a company identified as "Alexsis" was the third-party administrator of Jewish's workers' compensation self-insurance. Subsequently, Jewish hired its own workers' compensation specialist, Lori Fryrear, as an in-house administrator.

Wymer was treated by Dr. Carroll Witten, Jr., who ultimately diagnosed a torn rotator cuff, performed corrective surgery in June 1994, and prescribed post-operative physical therapy. The physical therapy was administered at Jewish's Shelbyville location by Eric Novosel, also an employee of Jewish. Wymer alleges that while administering this therapy, Novosel negligently caused her deltoid muscle to be separated from her acromium, necessitating additional surgery by Dr. Thomas Loeb in January 1995.

Wymer filed a workers' compensation claim against Jewish for her March 23,

1994 injury. All of Dr. Witten's and Dr. Loeb's medical bills were submitted to and paid under Jewish's workers' compensation self-insurance coverage. The "patient information" form signed by Wymer during her first visit to Dr. Loeb's office on September 16, 1994 recites that she was injured "on the job" on March 23, 1993, and that the responsible insurers were Jewish Hospital and Alexsis. On September 16, 1995, two months after filing this tort action, Wymer signed another patient information form in Dr. Loeb's office, again stating that her injuries were incurred "on the job" on March 23, 1993. Wymer signed yet another patient information form in Dr. Loeb's office on July 17, 1996, again indicating that her injury occurred "on the job" on March 23, 1993 and that the primary insurance company was "Risk Management W/C, Jewish Hospital (Lori Fryrear)."

Jewish paid workers' compensation benefits to Wymer for temporary total disability until May 15, 1995. Payments were terminated pursuant to a written opinion from Dr. Loeb that Wymer could "return to work two handed by the middle of May 1995." By letter dated May 17, 1995, Lori Fryrear offered to settle Wymer's workers' compensation claim for the monetary equivalent of 20% permanent partial disability. This offer was premised upon a written opinion from Dr. Loeb that Wymer's permanent disability rating would be in the range of 15% to 20% to the body as a whole. The record does not reflect whether the claim was ever settled.

On June 14, 1995, Wymer sued Novosel in tort for the injuries allegedly inflicted by him in August 1994. She also sued Novosel's (and her) employer, Jewish, for vicarious liability.

KRS 342.690(1) provides in pertinent part as follows:

If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter *shall be exclusive and in place of all other liability* of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty *on account of such injury or death.... The exemption* from liability given an employer by this section *shall also extend to* such employer's carrier and to *all employees,* officers or directors of such employer or carrier.... (Emphasis added.)

KRS 342.700(1) provides in pertinent part as follows:

*Whenever an injury for which compensation is payable* under this chapter has been sustained under circumstances creating in *some other person than the employer* a legal liability to pay damages, the injured employee may either claim compensation or proceed at law by civil action *against the other person* to recover damages, or proceed both against the *employer for compensation* and the *other person for damages,* but he shall not collect from both.... If compensation is awarded under this chapter, the employer ... having paid the compensation or having become liable therefor, may recover in his or its own name or that of the injured employee from the other person in whom legal liability for damages exists, not to exceed the indemnity paid and payable to the injured employee, less the employee's legal fees and expenses. (Emphasis added.)

Read together, these two statutes have been held to preclude application of the so-called "dual capacity" doctrine in Kentucky. *Borman v. Interlake, Inc.,* Ky. App., 623 S.W.2d 912 (1981).

Under this doctrine, an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer.

*Id.* at 913 (quoting A. Larson, 2A *Law of Workmen's Compensation* § 72.80, at 14–112 (1976)). That is precisely what the majority opinion permits Wymer to do here. Because Jewish occupied, in addition to its capacity as Wymer's employer, a second capacity as treatment provider, the majority essentially holds that the exclusive remedy provisions of the two statutes do not apply. If that is to be our holding, we need to specifically overrule *Borman, supra,* so as not to leave this area of the law in a state of confusion. However, I believe *Borman* accurately interprets our statutory scheme. What other meaning can be ascribed to the words, "shall be exclusive and in place of all other liability"?

Admittedly, there are circumstances in which application of the "dual capacity" doctrine might have some equitable appeal (though workers' compensation is a creature of statute, not equity). For example, in *Sharp v. Ford Motor Company,* 66 F.Supp.2d 867 (W.D.Ky.1998), *aff'd,* 194 F.3d 1314, 1999 WL 801554 (6th Cir.1999), it was held that Ford, which was the "up-the-ladder" employer of a subcontractor's employee, was entitled to "exclusive remedy" protection, *Fireman's Fund Insurance Co. v. Sherman & Fletcher,* Ky., 705 S.W.2d 459 (1986), against a products liability action brought by the employee for injuries sustained while operating a Ford-manufactured vehicle on Ford's job. The injured worker had filed for and received workers' compensation benefits for his injury, but from his own employer, the subcontractor, not from Ford. Still, Ford was

held entitled to "exclusive remedy" immunity. However, here, as in *Borman, supra,* Wymer applied for and received workers' compensation benefits from the same employer she now seeks to sue and for the same injury that is the subject of this suit. She recovered workers' compensation benefits not only for her original March 23, 1993 injury, but also for the injury which she attributes to Novosel's negligence in August 1994. Dr. Loeb treated Wymer only after the August 1994 incident; yet, all of his medical bills were submitted to and paid under Jewish's workers' compensation self-insurance coverage; and Jewish paid temporary total disability benefits to Wymer after August 1994 and until May 1995. And for good reason.

In *Elizabethtown Sportswear v. Stice,* Ky.App., 720 S.W.2d 732 (1986), an employee sustained a work-related back injury and received treatment for recurring pain. A year later, she underwent a lumbar myelogram and died from a severe allergic reaction to the opaque dye. The issue was whether her former employer was liable for death benefits when the death did not result directly from the injury, but from treatment of the injury. *Stice* noted:

Professor Larson tells us that it is now uniformly held that aggravation of the primary injury by necessary medical or surgical treatment is compensable. He cites numerous examples, including exacerbation of a claimant's condition, or death, resulting from antibiotics, antitoxins, sedatives, pain-killers, anesthesia, electrical treatment, or corrective or exploratory surgery.

*Id.* at 734 (citing A. Larson, 1 *Workmen's Compensation Law* § 13.21 (1985)). The employer in *Stice* was required to pay workers' compensation death benefits for

the employee's death. *Id.* See also *Pond Creek Collieries Co. v. LaSantos,* 307 Ky. 866, 212 S.W.2d 530 (1948), wherein the employee sustained a hip fracture when he fell out of a hospital bed while being treated for work-related injuries.

> [I]f the hip fracture was not sustained in the fall from the hoist car, it occurred during treatment in such a manner as to constitute in effect an aggravation of the original injuries.... Clearly, if this was a subsequent fracture, it resulted from his medical treatment as an aggravation of his initial injuries. In such cases, the ultimate disability should be compensable.

*Id.,* 212 S.W.2d at 532.

Finally, KRS 342.020(7) (formerly (3)) provides:

> No action shall be brought against any employer subject to this chapter by any person to recover damages for malpractice or improper treatment received by any employee from any physician, hospital, or attendant thereof.

As pointed out in *Stice, supra:*

> This statute has been interpreted to mean that a civil action cannot be brought against the employer for damages caused by a physician's malpractice or improper treatment, not that a claim for worker's compensation benefits cannot be brought by the employee to recover for additional disability resulting from treatment which aggravates a work-related injury.

*Id.* at 734 (citing *McCorkle v. McCorkle,* Ky., 265 S.W.2d 779 (1954) and *Black Mountain Corp. v. Middleton,* 243 Ky. 527, 49 S.W.2d 318 (1932)).

Jewish was clearly liable in workers' compensation for any injury inflicted upon Wymer by Novosel during treatment rendered for her March 23, 1993 work-related injury. If the August 1994 injury had been inflicted by "some other person" than a Jewish employee, Wymer could have sued "such other person" per KRS 342.700(1); but Jewish would have been subrogated against that person for the workers' compensation payments it made to her. An employer, of course, cannot be subrogated against itself for its own workers' compensation payments. Being liable for and having paid workers' compensation benefits to Wymer for any injuries caused by the negligence of Novosel, Jewish cannot now be held vicariously liable in tort for those same injuries. Nor is Novosel liable in tort to Wymer, since KRS 342.690(1) also extends "exclusive remedy" immunity to the employer's other employees.

As for Gary Wymer's claim for loss of consortium, I ascribe to Justice Leibson's view that a loss of consortium claim is derivative of the claim of the injured spouse. *Moore v. State Farm Ins. Co,* Ky., 710 S.W.2d 225, 227 (1986) (Leibson, J., concurring). If the injured party's claim is barred, so should be the claim for loss of consortium.

Accordingly, I dissent from that portion of the majority opinion that reverses the dismissal of Wymer's common law negligence claim.

JOHNSTONE, J., joins this opinion.