# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: AUGUST 24, 2017
NOT TO BE PUBLISHED

Supreme Court of Kentucky

FINAL

2016-SC-000131-WC   DATE 9/14/17 Kim Redmon, DC

SLATER FORE CONSULTING, INC.            APPELLANT

           ON APPEAL FROM COURT OF APPEALS
V.            CASE NO. 2015-CA-000778-WC
           WORKERS' COMPENSATION BOARD
           NO. 12-WC-70061

LESLIE B. RIFE; HON. WILLIAM            APPELLEES
J. RUDLOFF, ADMINISTRATIVE LAW
JUDGE; AND WORKERS' COMPENSATION
BOARD

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

After an Administrative Law Judge (ALJ) determined that Appellee, Leslie

B. Rife, a long-distance truck driver, was entitled to permanent total disability

and medical benefits following work-related injuries, the Workers'

Compensation Board (the Board) and the Court of Appeals both affirmed.

Having reviewed the record, we also affirm the findings and award of the ALJ.

## RELEVANT FACTS

During a chemical delivery to a Montana mine in June 2012 while

working for his employer, Slater Fore Consulting, Inc. (Slater), Rife tripped over

a large hose attached to his tanker truck and struck his head on a metal beam,

necessitating a trip to the local emergency room. He was treated for a significant laceration on his head, a laceration on his knee and also underwent diagnostic testing. He testified that he had a difficult trip home to Tennessee and sought further treatment there. His cervical complaints eventually led to a cervical fusion and post-operative complications from that surgery resulted in a stay in intensive care where he spent a week in a coma. While in the intensive care unit, Rife fell when attempting to get up from a chair unassisted, injuring his lower back. When more conservative treatment of the lower back condition was unsuccessful, he had a lumbar fusion. Rife has not returned to work and sought workers' compensation benefits for the cervical and lumbar injuries as well as a neurocognitive disorder stemming from an alleged traumatic brain injury at the time of his June 2012 fall.

Before the ALJ, Rife presented the deposition testimony and report of Dr. Jules Barefoot who concluded that Rife had a 28% impairment rating of his cervical spine, with 10% of that rating attributed to an earlier 2008 cervical fusion. Barefoot noted that Rife's symptoms resolved following that earlier surgery and he was working with no complaints or restrictions at the time of the June 2012 accident. Barefoot assessed a 32% impairment rating for the lumbar spine, for a combined 44% impairment rating which he attributed solely to the June 2012 accident. In Barefoot's opinion, Rife was unable to return to his prior truck driving position and was totally and permanently occupationally disabled. The ALJ also had before him medical reports from

2

various treating physicians including Rife's primary care physician and his surgeon.

Slater presented the reports of various medical experts, none of whom found Rife's injuries permanently disabling. Dr. Thomas O'Brien concluded Rife reached maximum medical improvement (MMI) in June 2012 and had no permanent impairment, with any surgeries or conditions unrelated to the work injury and solely attributable to pre-existing, non-work-related injuries or conditions. Dr. Henry Tutt similarly found no permanent impairment from the June 2012 accident, concluding Rife reached MMI in early July 2012. He found Rife had an active 33% impairment as to his cervical and lumbar conditions but attributed all of it to pre-existing conditions unrelated to the Montana accident. Two expert witnesses provided reports regarding Rife's traumatic brain injury or cognitive deficits, an issue that was eventually remanded to the ALJ by the Board and that is not currently before us.

After considering all of the evidence, the ALJ found Rife to be a credible witness regarding his current condition and limitations and further found Barefoot's testimony persuasive and compelling. The ALJ rejected Slater's argument that Rife suffered from a pre-existing active disability, determining that that condition had fully resolved prior to June 2012. Ultimately, the ALJ held that Rife had a 44% whole person impairment attributable to the work-related accident and was permanently and totally disabled effective from and after September 9, 2012, the date Rife last worked. The Board affirmed this ruling in its entirety but remanded the issue of cognitive injury to the ALJ for a

3

determination as to the appropriate impairment rating attributable to that injury.

On appeal, the Court of Appeals rejected Slater's arguments that (1) Rife's back condition was solely the result of a pre-existing condition, not the June 2012 fall; (2) Rife's lumbar injury resulting from his fall in the hospital was not causally related to the work accident; and (3) the ALJ erred in not apportioning any of Rife's disability to an active, pre-existing condition. Slater appeals from the Court of Appeals' opinion affirming the decision of the Workers' Compensation Board.

## ANALYSIS

The ALJ is the fact-finder in workers' compensation cases and is entrusted with sole authority to determine the quality, character and substance of the evidence. *Square D Co. v. Tipton*, 862 S.W.2d 308, 309 (Ky. 1993). There must be substantial evidence of probative value supporting the ALJ's decision. *Whittaker v. Rowland*, 998 S.W.2d 479, 481-82 (Ky. 1999). On appellate review, we defer to the ALJ's decision unless we find the ALJ has overlooked or misconstrued controlling law or has flagrantly erred in assessing the evidence. *U.S. Bank Home Mortgage v. Schrecker*, 455 S.W.3d 382, 384 (Ky. 2014). Although we review matters of law *de novo*, findings of fact will be set aside only if the evidence compels a contrary finding. *Id.*

Slater maintains that the ALJ erred in finding that Rife's cervical condition was attributable to the June 2012 work injury. Noting evidence of record concerning Rife's prior cervical spine issues, including a cervical

4

discectomy and fusion in 2008, Slater maintains that Rife's neck complaints are a result of degenerative changes, not acute trauma. Slater further maintains that Rife has minimized his earlier complaints and the ALJ inappropriately ruled that the cervical condition was a work-related injury based solely on the claimant's credibility. The evidence was undisputed that Rife was working with no restrictions at the time of the June 2012 accident.

In fact, the ALJ did find Rife to be a credible witness regarding his medical history and condition but the ALJ further grounded his findings in the medical testimony of Barefoot. As noted, Barefoot assigned a 28% impairment rating to the cervical spine but he also apportioned 10% of that to the 2008 cervical fusion. Thus, Slater errs in contending that the cervical spine finding ignores Rife's earlier neck issues because Barefoot specifically accounted for any pre-existing condition in making his assessment. There is certainly evidence to the contrary from experts presented by Slater but sorting through conflicting evidence is the province of the ALJ. Here there is substantial evidence to support the cervical injury finding and the evidence, considered in its entirety, does not compel a contrary finding. *U.S. Bank Home*, 455 S.W.3d at 384. Thus, the Board and Court of Appeals did not err in affirming the ALJ's decision on this issue.

Next, Slater challenges the ALJ's conclusion that Rife's lumbar injury, suffered when he fell in the intensive care unit of the hospital while recovering from the December 2012 cervical surgery, is causally related to his work injury. The ALJ relied on *Pond Creek Collieries Co. v. La Santos*, 212 S.W.2d 530 (Ky.

5

1948) and *Elizabethtown Sportswear v. Stice*, 720 S.W.2d 732 (Ky. App. 1986), in finding that this lower back injury was compensable. Both cases address injuries occurring in the course of a patient's treatment for a work-related injury.

In *Pond Creek*, the claimant fell from a hoist car at a coal mine and suffered multiple injuries including fractured ribs and a punctured lung that led to his hospitalization. 212 S.W.2d at 531. On his third day in the hospital, he fell and x-rays revealed a hip fracture, an injury not previously identified. *Id.* It was impossible to determine when the hip fracture occurred but this Court's predecessor concluded that regardless of whether it was part of the original workplace injury or solely a result of the hospital fall it was still compensable. *Id.* at 532. "[E]ven if his hip was fractured when he fell from or beside his hospital bed, this occurred during his medical treatment at a time when he could not be held accountable for his acts, and as direct and proximate result of the original injury suffered in an 'accident arising out of and in the course of his employment.'" *Id.*

Almost forty years later, in *Elizabethtown Sportswear*, the Court of Appeals addressed a case brought by the estate of a worker who suffered a work-related back injury. 720 S.W.2d at 733. The worker was hospitalized over a year following the injury for recurring back pain and a lumbar myelogram was ordered. *Id.* Tragically, she suffered an allergic reaction to the dye used in the procedure and died within twenty-four hours. *Id.* Relying in part on *Pond Creek*, the *Elizabethtown Sportswear* panel held that the widower

6

was entitled to death benefits for this work-related death. *Id.* at 734. The court reasoned that an employee or her estate can recover for additional disability (or death) suffered as a result of medical treatment for the work-related injury. *Id.*

Slater summarizes what it perceives as the distinction between this case and the foregoing cases as follows:

> Here, there is no evidence that Appellee's fall in the hospital was in any way caused by his work injury or the treatment he was receiving. The simple fact that he fell *while in the hospital* does not lead to the conclusion that the fall is a 'direct and natural result' of his treatment. There is a clear difference between an injury that occurs *during* treatment and an injury that is *caused* by the treatment. The hospital fall must therefore be considered a subsequent intervening cause and not 'a direct and natural result' of the work injury.

Appellant's Brief at pp. 15-16 (emphasis in original).

Here, as in *Pond Creek*, Rife was confined to the hospital following cervical surgery necessitated by his work-related injury. While still in the intensive care unit following a week-long coma, he stood to get up from a chair and fell, injuring his lower back in a manner that required further surgery in June 2013. We see no principled basis for distinguishing Rife's situation from that of the claimant in *Pond Creek*. The ALJ properly found the lumbar injury to be compensable and, consequently, the Board and Court of Appeals appropriately affirmed.

Slater's third and final argument concerns Rife's alleged pre-existing condition as to both his neck and lower back. Slater insists that the ALJ erred

7

in not recognizing the evidence of prior problems Rife experienced with his neck and lower back and then reducing any award accordingly. Both the Board and the Court of Appeals noted that the ALJ correctly differentiated between impairment and disability, an important distinction in determining permanent total disability.

> Impairment and disability are not synonymous. We conclude, therefore, that an exclusion from a total disability award must be based upon pre-existing disability, while an exclusion from a partial disability award must be based upon pre-existing impairment. For that reason, if an individual is working without restrictions at the time a work-related injury is sustained, a finding of pre-existing impairment does not compel a finding of pre-existing disability with regard to an award that is made under [Kentucky Revised Statutes] 342.730(1)(a).

*Roberts Bros. Coal Co. v. Robinson,* 113 S.W.3d 181, 183 (Ky. 2003).

Here there was certainly evidence of Rife's prior neck and lower back issues but he was never deemed disabled and he continued to work without restrictions up to the date of his accident in Montana. Rife may well have had a pre-existing impairment of his neck and lower back but that did not equate with a pre-existing disability. Under the *Roberts Bros. Coal* standard, there was no basis for reducing the permanent total disability award due to a pre-existing disability and, accordingly, the ALJ did not err.

For the foregoing reasons, we affirm the Court of Appeals' opinion affirming the Workers' Compensation Board's decision in this matter.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Bonnie Jo Hoskins
Carl Martin Brashear
Hoskins Law Offices, PLLC


COUNSEL FOR APPELLEE, LESLIE B. RIFE

Christopher P. Evensen
Evensen Law Office, LLC

9