RENDERED: NOVEMBER 3, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0271-MR

LAMKIN WEALTH MANAGEMENT,
LLC AND MARK LAMKIN                                                    APPELLANTS


v.          APPEAL FROM JEFFERSON CIRCUIT COURT
            HONORABLE JULIE KAELIN, JUDGE
            ACTION NO. 20-CI-002389


ROD BROOKS                                                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, JONES, AND McNEILL, JUDGES.

COMBS, JUDGE: In this breach of contract and tort action Lamkin Wealth

Management, LLC, a financial services firm, and Mark Lampkin, the firm's

founder and a financial advisor, appeal the summary judgment of the Jefferson

Circuit Court entered on January 30, 2023, in favor of Rod Brooks, a financial

advisor formerly affiliated with Lamkin Wealth Management, LLC. After our

review, we affirm.

In 2006, before he had completed his licensing exams, Brooks was hired by Lamkin Wealth Management, LLC (Wealth Management), as an employee of the firm. He had limited contact with the firm's clients and was not involved in any commission-based securities transactions. At that time, Wealth Management was affiliated with LPL Financial Corporation, a "Registered Investment Advisor," that acted as a broker for Wealth Management's securities transactions.

Several months later, after he passed his exams, Brooks's employment with Wealth Management ended. He became an independent contractor sharing revenue with Lamkin. This revenue included commissions generated from the client accounts he serviced. Brooks became a "Registered Representative" with LPL Financial Corporation, which now provided broker services with respect to his clients' securities transactions.

In October 2017, Brooks ended his association with Wealth Management and became affiliated with another firm. Many clients chose to continue their relationship with Brooks, and he continued to provide financial planning services to them. His new firm was affiliated with First Allied Securities, Inc., which provided the necessary broker services to Brooks's clients.

On April 7, 2020, Lamkin and Wealth Management filed a civil action against Brooks in Jefferson Circuit Court. They alleged that Brooks was "subject

to and contractually bound by the policies stated in the [Wealth Management] Employee Handbook." They alleged that when Brooks left, he breached provisions of the employee handbook -- including its two-weeks'-notice provision and its non-compete provisions. They also alleged that he had likely misappropriated confidential information regarding clients in violation of the employee handbook provisions. Separately, they argued that Brooks tortiously interfered with a prospective business advantage; engaged in unfair competition; and breached his fiduciary duties to the firm and Lamkin. They sought compensatory and punitive damages.

Brooks answered and denied the material allegations of the complaint. As an independent contractor, he denied that he was bound by any of the terms of their employee handbook or that he owed fiduciary duties to Lamkin or the firm. Discovery ensued. The matter was set for a bench trial to commence in January 2023.

In October 2022, Wealth Management and Lamkin filed a motion for partial summary judgment. Observing that the parties' brokers were signatories to the Protocol for Broker Recruiting, they argued that Brooks's failure to abide by its provisions (concerning his transition to a new firm supported by a different broker) meant that he could not use the protocol as a shield from the litigation instituted against him. Brooks argued that the terms of the Protocol for Broker Recruiting

were absolutely immaterial to the dispute because the parties are not, never were, and could never be signatories to the agreement.

Additionally, Brooks filed a motion for summary judgment. He explained that his only agreement with Wealth Management or Lamkin was a split-fee agreement. There was no allegation that the terms of this agreement had ever been violated. He had never agreed to the terms of any non-compete provision. As an independent contractor, he argued that he was not bound by the terms of the firm's employee handbook, which merely explained employee benefits and provided "some general guidance about rules and operating procedures which are believed to be useful to all employees."

Brooks argued that there was no legal basis upon which to conclude that he owed Wealth Management or Lamkin a fiduciary duty of any kind, pointing out that he was forbidden by governing regulations from acting as a fiduciary to anyone except his clients. He observed that financial advisors are free to change firms; that clients can follow their financial advisors to new firms; and that previous firms are prohibited from interfering with this process. Brooks claimed that the allegations contained in the complaint filed by Wealth Management and Lamkin were patently false and were subject to sanctions by the court.

In response, Wealth Management and Lamkin admitted that the Broker Protocol was **not a contract** between the parties. Nevertheless, they

explained that Brooks would have been "wise to follow the transition procedure it outlines as a guarantee of protection from a lawsuit. . . ."

Furthermore, Lamkin and Wealth Management argued that summary judgment was not warranted. They characterized as "incredible" Brooks's representation that he had executed a single contract -- the split fee agreement -- after he had worked with the firm for more than nine years. They argued that he must have agreed to protect confidential information and trade secrets; that he must have agreed not to lure clients away from the firm; and that he must have agreed not to compete with the firm if he decided no longer to be associated with it. In support of these statements, they presented two affidavits.

The affidavit testimony of Doug Obradovich (President of Wealth Management) indicated that "Registered Representatives who were affiliated with [Wealth Management] either as at-will Independent Contractors or as Employee Advisors, were expected to sign a Non-Compete Representative Agreement." However, Obradovich acknowledged that the file folder related to Brooks and kept in Obradovich's office did not contain any such agreement. He also explained that he had led discussions at firm meetings that focused upon the firm's "Non-Compete Representative Agreement" and that "the goal was to be sure everyone understood 'the right way to leave [Wealth Management].'" A copy of the Non-

Compete Representative Agreement executed by a former associate of the firm, Joseph Gary Smith, was attached to the affidavit.

The affidavit testimony of Joseph Gary Smith indicated that he understood that "all the Registered Representatives were expected to sign [the employee handbook] and "a Non-Compete Representative Agreement." Smith stated that when he left the firm, Lamkin told him that he "had left the right way."

Lamkin and Wealth Management argued that "[t]hese two affidavits, each from an experienced Registered Representative with years in the industry, including time at [the firm], raise serious doubts about Brooks' [*sic*] insistence that he never had a contract with [Wealth Management] other than the split fee agreement." They asked, "[w]as he the *only* Registered Representative who signed nothing. . . ?" Based on the discussions conducted at the numerous firm meetings that Brooks attended, they contended that "at the very least" he had an oral contract.

In an order entered on January 30, 2023, the Jefferson Circuit Court granted summary judgment in favor of Brooks. It concluded that Brooks was entitled to judgment as a matter of law because the provisions of the Broker Protocol were irrelevant to the dispute and that Wealth Management and Lamkin could not show that Brooks, an independent contractor, was bound to the provisions of an employee handbook; that there had been no proof that Brooks

tortiously interfered with any prospective business advantage; that he engaged in any unfair competition; or that he breached any fiduciary duties owed to Wealth Management and/or Lamkin. The court denied the subsequent motion to alter, amend, or vacate. This appeal followed.

Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[1] 56.03. Because summary judgment involves only questions of law and not the resolution of disputed material facts, we do not defer to the trial court's decision. *Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378 (Ky. 1992). Instead, we review the decision *de novo*. *Cumberland Valley Contrs., Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644 (Ky. 2007).

On appeal, Wealth Management and Lamkin argue that the trial court erred by granting summary judgment. With respect to their breach of contract claim, Wealth Management and Lamkin contend that the trial court ignored the existence of genuine issues of material fact. They identify these four issues as both disputed and material: 1) whether Brooks ever signed an employee handbook; 2) whether Brooks executed any document other than the split-fee agreement; 3)

---

[1] Kentucky Rules of Civil Procedure.

whether Brooks was contractually bound to a non-compete or confidentiality agreement; and 4) whether Brooks's course of conduct bound him in any way.

In support of their contention, Lamkin and Wealth Management argue that the trial court ignored their assertion -- newly made in their motion to alter, amend, or vacate -- that they expected Lamkin to testify at trial that he required independent contractors to agree to the terms of the firm's employee handbook. However, this putative testimony falls short of identifying a genuine issue of material fact. Moreover, a party may not invoke the provisions of CR 59.05 to raise new arguments and to introduce evidence that should have been presented during the proceedings before the entry of judgment. *Gullion v. Gullion*, 163 S.W.3d 888 (Ky. 2005); *Hopkins v. Ratliff*, 957 S.W.2d 300 (Ky. App. 1997). Consequently, the trial court did not err by taking no notice of an argument asserted or evidence offered for the first time in the motion to alter, amend, or vacate its judgment.

Lamkin and Wealth Management also contend that the trial court erred by ignoring the affidavit testimony of Doug Obradovich and Joseph Gary Smith. Again, we disagree.

A party opposing summary judgment "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary

judgment." *O'Bryan v. Cave*, 202 S.W.3d 585, 587 (Ky. 2006) (citing *Steelvest, Inc. v. Scansteel Service Center Inc.,* 807 S.W.2d 476, 483 (Ky. 1991)). At best, relevant portions of the tendered affidavits indicate that another advisor (and perhaps others) may have agreed to the terms of a non-compete agreement. They indicate that they can produce **no evidence** to show that **Brooks** was bound to provisions of the firm's employee handbook.

Moreover, evidence offered to indicate that Brooks attended firm meetings associated with Wealth Management is an insufficient basis upon which to conclude that he entered into an oral agreement to leave the firm "the right way." The assertions contained in the affidavits do not constitute affirmative evidence against Brooks's assertion that he was not bound to the provisions of the firm's employee handbook and that he never agreed to the provisions of a separate non-compete agreement so as to raise a genuine issue of material fact.

Summary judgment is appropriate where the nonmoving party relies on little more than "speculation and supposition" to support his claims. *O'Bryan*, 202 S.W.3d at 588. The arguments of Lamkin and Wealth Management amount to no more than speculation in bolstering their unsupported claims. The circuit court did not err.

The same reasoning applies to Lamkin's deposition testimony indicating that he had seen a non-compete agreement executed by Brooks, that he

believed that Brooks had subsequently stolen it, and that Brooks was bound by an implied or oral contract. A "party opposing summary judgment cannot rely on their own claims or arguments without significant evidence in order to prevent a summary judgment." *Wymer v. JH Properties, Inc.*, 50 S.W.3d 195, 199 (Ky. 2001). There was no evidence offered in support of these speculative and self-serving assertions.

Next, Wealth Management and Lamkin argue that the trial court erred by granting summary judgment with respect to their "unfair competition tort claim." They contend that the bare bones of the elements of the tort claim were set out in their verified complaint and that they had only begun "to flesh out the elements" when the motion for summary judgment was filed.

A party is permitted to file a motion for summary judgment at any time. However, trial courts may consider summary judgment motions "only after the opposing party has been given ample opportunity to complete discovery." *Pendleton Bros. Vending, Inc. v. Commonwealth Finance and Admin. Cabinet,* 758 S.W.2d 24, 29 (Ky. 1988). We utilize the standard of abuse of discretion in reversing a trial court's determination that a sufficient amount of time has passed and that it can properly take up the summary judgment motion for a ruling. *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010).

Lamkin and Wealth Management failed to identify any affirmative evidence that they hoped to gather in support of this cause of action or how that evidence might help them to meet their burden in opposing the motion for summary judgment. Under these circumstances, the trial court did not abuse its discretion in determining that they had adequate opportunity to conduct discovery and that sufficient time had passed for it to rule on the summary judgment motion filed more than two and a half years after the action was commenced.

Finally, Wealth Management and Lamkin argue that the trial court erred by granting summary judgment with respect to their "breach of duty tort claim" because it ignored Brooks's status as a senior vice-president of the firm. This argument and the evidence offered to support it (a business card and printed letterhead) were presented to the trial court only in the motion to alter, amend, or vacate. Again, a party may not invoke the provisions of our CR 59.05 to raise arguments and to introduce evidence that should have been presented during the proceedings before the entry of judgment. *Gullion*, *supra*.

We affirm the summary judgment of the Jefferson Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANTS:                    BRIEF FOR APPELLEE:

Kenneth A. Bohnert                         Kirsten Daniel
Louisville, Kentucky                       Louisville, Kentucky

Maureen P. Taylor
Louisville, Kentucky