Travis R. SHARP, et al., Plaintiffs,

v.

FORD MOTOR COMPANY,
et al., Defendants.

No. CIV.A.3:97CV–780–S.

United States District Court,
W.D. Kentucky,
at Louisville.

Aug. 7, 1998.

Susan P. Spickard, William J. Driscoll, Spickard, Leibson & Driscoll, Tamara T. Cotton, Angeline B. Golden, Golden & Patterson, Louisville, KY, for Plaintiff, Travis R. Sharp.

Rodney Dale Payne, Scott C. Wilhoit, Clark, Ward & Cave, Louisville, KY, for Intervening Plaintiff, Kentucky Auto Ramp Service.

Gina W. Walsh, Dinsmore & Shohl, Bryan Todd Thompson, Millicent A. Tanner, Thompson & Miller, Louisville, KY, for Defendant, Ford Motor Co.

## MEMORANDUM OPINION

SIMPSON, Chief Judge.

This matter is before the court on the motion of the defendant, Ford Motor Company, for summary judgment. This case involves a claim for injuries sustained while the plaintiff was employed by a company hired by Total Distribution Services, Inc. ("TDSI") to perform work for Ford. For the reasons set forth below, the court will grant Ford's motion for summary judgment.

### FACTS

Ford hired TDSI to load and unload Ford vehicles to and from rail cars outside the Louisville Assembly Plant. TDSI hired Kentucky Auto Ramp Services ("KARS") to perform the loading of the rail cars. Travis Sharp, an employee of KARS, worked as a rail loader, and was injured on January 19, 1996 while operating a Ford Explorer. Ford asserts, and Sharp does not deny, that Sharp received compensation under Kentucky's Workers' Compensation Act. These benefits were provided by KARS.

Sharp brought product liability claims against Ford in state court for allegedly manufacturing a defective product (the Explorer). KARS intervened in the action to recover workers' compensation benefits it paid to Sharp. Ford removed the case to this court and now asks the court for summary judgment on the plaintiff's claims. Ford asserts that Sharp's claims are barred by exclusive remedy sections of the Kentucky Workers' Compensation Act.

### DISCUSSION

In order to support a motion for summary judgment, a moving party must prove the absence of a genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a summary judgment motion, a judge's role is not to weigh the evidence or determine its truth, but to determine if a genuine question of fact exists. *Id.* at 249, 106 S.Ct. 2505. "[W]hether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. In making these determinations, the court is to view all facts and inferences in a light most favorable to the nonmoving party. *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941 (6th Cir.1990).

### I. EXCLUSIVENESS OF REMEDY UNDER WORKERS' COMPENSATION STATUTE

Under KRS 342.690, "[i]f an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of

such employer to the employee...." That section also goes on to state that for purposes of that section, the term "employer" shall include "contractor" covered by KRS 342.610(2). KRS 342.610(2) states:

A contractor who subcontracts all or any part of a contract and his carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter.... A person who contracts with another: ... (b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person shall for the purposes of this section be deemed a contractor, and such other person a subcontractor.

■■■ Ford asserts the "up the ladder" defense, in which an entity "up the ladder" from the injured employee and who meets all the qualifications of a "contractor" under KRS 342.610(2) is entitled to the immunity provided by KRS 342.690. *See Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378, 381 (Ky.1992). It is undisputed that Ford contracted with TDSI, who subcontracted with Sharp's employer, KARS. It is also undisputed that KARS secured the payment of workers' compensation benefits under Kentucky's workers' compensation law. The only question that remains, then, is whether the work being performed by the plaintiff, as an employee of KARS, was "of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession" of Ford.

■■ Kentucky courts have construed "regular or recurrent" "to mean that a person who engages another to perform a part of the work which is a recurrent part of his business, trade, or occupation is a contractor. Even though he may never perform that particular job with his own employees, he is still a contractor if the job is one that is usually a regular or recurrent part of his trade or occupation."

*Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 462 (Ky.1986). Thus, the fact that the defendant did not ordinarily perform the work itself, but usually subcontracted the work to others is a "distinction ... of no significance" under the statutes. *Granus v. North American Philips Lighting Corp.*, 821 F.2d 1253, 1257 (6th Cir.1987).

In support of its motion, Ford contends that its "principal business is designing in part, manufacturing in part and selling of vehicles. Distribution of these vehicles is an integral part of Ford's business." Ford presents no affidavits in support of this position, but instead points to the agreement between Ford and TDSI. Ford states: "[t]he fact that Ford set forth specific requirements by which TDSI was to transport its vehicles, and the fact that the transportation was to occur on Ford's property, demonstrates that the transport of vehicles by KARS and TDSI from the Ford plant to the railcars was a regular and recurrent part of Ford's business."

In response, Sharp points out parts of a deposition of a Ford representative. Sharp states that the representative, Lou Kosko, says that Ford only assembles vehicles and nothing else. However, these portions reflect the fact that Ford assembles only certain types of products. Kosko did not state that distribution was not a regular and recurrent part of the business. In fact, Kosko stated that Ford did not involve itself in the distribution process; rather, it hired out those functions to its contractor, TDSI.

Here, it would be nonsensical to believe that Ford's regular business is only the assembly of vehicles and not the distribution of the vehicles thus assembled. Ford provided for transportation of its products via the railway adjacent to the assembly plant. It contracted with TDSI to load and unload the vehicles in preparation for distribution. This contract began in 1994 and is to last until at least 1999. Thus, this was not a one-time project. Further, Kosko stated that while Ford itself does

not perform the actual distribution, it contracts with TDSI and the railway to perform the function for Ford. The fact that Ford does not actually perform the function, but subcontracts it instead, makes no difference under Kentucky law. Although Sharp asserts that a material issue of fact is present on the issue of "regular or recurrent" business, this court believes that this issue is one properly before the court and can clearly be resolved in favor of Ford.

For these reasons, the court finds that Ford is a contractor for purposes of KRS 342.610 and 342.690 and Ford is entitled to immunity from Sharp's claims for injuries sustained while operating a vehicle on its premises.

## II. DUAL CAPACITY DOCTRINE

 Sharp asserts that even if Ford is immune from suit by Kentucky workers' compensation law, under the "dual capacity" doctrine, Ford is liable aside from its obligations as an employer.

> Under this doctrine, an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer.

*Borman v. Interlake, Inc.*, 623 S.W.2d 912, 913 (Ky.App.1981). However, Kentucky has declined to apply the doctrine.

> The provisions of the Kentucky Workers' Compensation Act prohibit the application of the dual capacity doctrine. KRS 342.690 states that '...the liability of such employer ... shall be exclusive and in place of all other liability of such employer to the employee, ....' KRS 342.700 concerning third party liability, uses the language liability 'in some person other than the employer.' We believe this language evinces an intent to maintain the exclusivity of remedy principle intact.

*Id.* at 913. Because Kentucky has rejected the dual capacity doctrine, Sharp cannot maintain his suit pursuant to that doctrine.

For the reasons set forth above, the court will grant Ford's motion for summary judgment based on Kentucky's Workers' Compensation Act. Because KARS' intervening complaint is wholly dependent on Ford's liability to the plaintiff, resolution of the claim against Ford resolves the intervening complaint. The intervening complaint, therefore, will be dismissed. Ford's motion for leave to file a third party complaint is now rendered moot. Because the only remaining defendants are "unknown," this case is dismissed in its entirety. A separate opinion will be entered herein this date in accordance with this opinion.