COOK, Circuit Judge, concurring in part and dissenting in part.
I join the majority in its resolution and thorough analysis of Smith’s negligence claim against Siemens. I differ, however, with the majority on the immunity issue; I would affirm the district court’s judgment that NAS and SMS Demag qualify as “contractors” entitled to immunity under Kentucky’s workers’ compensation law. Because the majority views it differently, I must respectfully dissent.
NAS and SMS are immune under Kentucky workers’ compensation law.
As noted by the majority opinion, Kentucky law imposes workers’ compensation liability and immunity “up-the-ladder,” from subcontractor to contractor. That is, if a subcontractor fails to secure coverage for its employees, the contractor can be held hable for the payment of compensation to the employees of the subcontractor. K.R.S. § 342.610(2). The reverse is likewise true; where a subcontractor has, in fact, secured payment for its injured employee according to the workers’ compensation scheme, Kentucky law immunizes contractors “up-the-ladder” in the contrac *710 tual chain from tort liability that would otherwise arise out of the same injury or death. K.R.S. § 342.690. With this burden to pay compensation when the direct employer does not secure it, and its reciprocal benefit of the exclusive-remedy bar to tort liability, Kentucky seeks “to prevent subcontracting to irresponsible people.” Elkhorn-Hazard Coal Land Corp. v. Taylor, 539 S.W.2d 101, 103 (Ky.1976).
Both for purposes of liability and immunity, a “contractor” is “[a] person who contracts with another ... [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person.” K.R.S. § 342.610(2). The statutory language applies easily in two-level, contractor/subcontractor cases — such as Smith’s claim against SMS Demag: For SMS Demag to qualify as a contractor and consequently enjoy immunity, it must have contracted with Artisan (Smith’s employer) to perform work that is a “regular or recurrent” part of SMS Demag’s business. But the language does not fit as well when considering three-level, contractor/subcontractor/sub-subcontractor cases — such as Smith’s claim against NAS. NAS never contracted directly with Smith’s employer, Artisan — instead, it contracted SMS Demag to manufacture and install the melting furnace. SMS Demag, in turn, contracted Artisan to perform part of the installation work, including work necessary to ramp-up the newly-installed equipment to meet a service level promised by SMS Demag to NAS. The lack of direct contractual privity between NAS and Artisan alone, however, does not bar NAS from claiming the statutory immunity. Federal district courts have held that Kentucky’s worker’s compensation regime applies to relationships between contractors and the employees of their subcontractor’s subcontractors — or, in other words, that liability and immunity proceeds “up-the-ladder” more than one “rung.” See Waterbury v. Anheuser-Busch, Inc., 2003 WL 1145470, 2003 U.S. Dist. LEXIS 2639 (W.D.Ky.2003) (finding a beer maker immune to a claim by an employee of a company charged with transporting C02 tanks — /imr-steps down the contractual chain); Sharp v. Ford Motor Co., 66 F.Supp.2d 867 (W.D.Ky.1998) (finding a car maker immune to a claim by a employee of a sub-subcontractor). And Smith does not contend otherwise. In such cases, however, the relevant inquiry is not what the contractor (here, NAS) has contracted for with the first subcontractor (SMS Demag), but whether the work performed by the claimant is a) within the scope of the work contracted for between the original contracting parties (here NAS and SMS Demag), and b) is a regular or recurring part of the contractor’s business. See Waterbury, 2003 WL 1145470 at *2, 2003 U.S. Dist. LEXIS 2639 at *5 (defendant had contracted for the supply of C02, but the key question was “whether the delivery of the ... canisters was part of Anheuser-Busch’s regular or recurrent business” (emphasis added)); Sharp, 66 F.Supp.2d at 869 (“The only question that remains, then, is whether the work being performed by the plaintiff [was] ‘a regular or recurrent part of [the defendant’s business].” ’)
SMS Demag. SMS Demag is entitled to immunity because it contracted with Artisan for work that was a “regular or recurrent” part of SMS Demag’s business.
In assessing SMS’s immunity under K.R.S. § 342.690, we are looking up a single rung of the ladder — from Artisan to SMS Demag. As such, it is the contractual relationship between SMS Demag and Artisan and whether the work Smith was performing was a “regular or recurrent” part of SMS Demag’s business that determines SMS Demag’s immunity.
*711 The district court employed the proper analysis and found that a contractual relationship existed between SMS Demag and Artisan and that, at the time of the accident, Smith was performing work of a type that is regular or recurrent in SMS Demag’s business. The contract between NAS and SMS Demag buttressed the district court’s conclusion. SMS Demag contracted with NAS to “supply ... all constituent elements necessary for the efficient operation of the [melt-shop] Equipment,” to “Erect” such equipment, and to “supervise and direct ... the Commissioning and Provisional Acceptance of the Equipment.” SMS Demag also covenanted that the equipment it supplied would be “suitable for [NAS’s] intended use ... [and that it, SMS Demag, was] fully capable of ... commissioning of the Equipment ... within the tolerances necessary for [its] efficient operation.” The accident happened after the equipment was installed, but prior to NAS’s provisional acceptance of the equipment, while the melt shop was still “rampfing] up” its operation to full (i.e., efficient) production. Since the contract required SMS Demag to commission — in the sense of “put into service” — the machinery to efficient production, and since the work that Smith was performing at the time of the accident was indisputably necessary to that task SMS Demag had contracted to perform for NAS, the work Smith was performing at the time of the accident was undoubtedly a regular or recurring part of SMS Demag’s business.
The majority’s resolution of the issue appears to turn on a distinction between whether the work performed by Smith at the time of the accident is properly characterized as “maintenance” or “installation”. Specifically, the majority characterizes SMS Demag’s contractual undertaking as limited to “installation” and excluding “maintenance.” The actual agreement between NAS and SMS Demag, however, spells out a scope of work that cannot be so tidily compartmentalized. SMS Demag’s contractual undertakings included the provisioning of labor and equipment necessary for the commission and efficient operation of the equipment up until the time of NAS’s provisional acceptance. That necessarily included the replacement or repair of worn or defective subcomponents of the equipment, such as its electrode arms — at least until the time of NAS’s provisional acceptance of the equipment.
The only “evidence” cited by the majority as creating a genuine issue of material fact as to whether Smith’s work was a regular or recurrent part of SMS Demag’s business is a statement from NAS’s brief that “The work SMS subcontracted to Artisan was not construction work at all but, rather, maintenance and repair work that SMS was required to provide NAS until Provisional Acceptance____” (Emphasis added.). While the majority apparently focuses on the single word “maintenance” in that statement in setting up its distinction, it overlooks the more important concept — that the work performed (no matter how it is labeled) was required by the agreement between NAS and SMS Demag. Where, as here, SMS Demag directly contracted to provide the services Smith was performing at the time of the accident, it necessarily follows that those same activities were a “regular or recurrent” part of SMS Demag’s business.
Finally, it is irrelevant to the analysis that SMS Demag may never have planned to perform the work with its own employees. Contractors often do not perform the services that they contract to deliver. But they are “on the hook” for such services and all that they require. The Supreme Court of Kentucky addressed this scenario in Fireman’s Fund, Ins. Co. v. Sherman & *712 Fletcher, 705 S.W.2d 459, 461 (Ky.1986) where it held a company engaged in the business of building construction was immune under K.R.S. § 342.690 from tort liability for injuries suffered by a rough carpenter whose employer it had subcontracted. In reaching its conclusion, the court rejected the claimant’s objections that the defendant/building construction company did not regularly do “rough” framing itself, but subcontracted the work to others, noting that “[e]ven though he may never perform that particular job with his own employees, he is still a contractor if the job is one that is usually a regular or recurrent part of his trade or occupation.” Id. at 462. Here, SMS Demag agreed to provide full-production equipment and to demonstrate that the equipment was capable of operating at full production. Because it could not bring the equipment up to its full production level (and thus perform its duties under the contract) without the work that Smith performed at the time of his injury, SMS Demag implicitly was bound by its contract with NAS to perform that work. The services SMS Demag contracted to provide NAS are, by definition, regular or recurrent aspects of its work.
NAS. Although a closer question, I also conclude that Kentucky law and this court’s earlier opinions on the issue counsel that NAS is immune from Smith’s negligence suit under K.R.S. § 342.690. The majority bases its determination that NAS does not qualify as a “contractor” for purposes of immunity on its observation that the installation of the melt shop equipment is “a one time affair.” Kentucky case law and the words of the statute itself, however, demonstrate that the “one-time” nature of an activity performed is not determinative of a party’s status as a “contractor” for purposes of the statutory immunity. If the statute’s definition of a contractor referred only to work that was a “recurrent” part of the contractor’s business, I would reach a different conclusion. But, under the statute a contractor is a person who contracts for work that is a “regular or recurrent part” (emphasis added) of the contractor’s business, and lest “regular” be rendered superfluous, it must mean something different than “recurrent.” Regular can mean “happening at fixed intervals [or] periodic.” But it can also mean “customary, usual, or normal,” or even “proper.” Webster’s II New College Dictionary 934 (2001). The majority itself recognizes this with its citation to Daniels v. LG & E, 933 S.W.2d 821, 824 (Ky.Ct.App.1996) for the proposition that “ ‘regular’ means ‘customary or normal, or happening at fixed intervals,’ while ‘recurrent’ simply means ‘occurring again or repeatedly.’ ” (Emphasis added.)
Focusing on the term “regular”, a firm would be a contractor if the practice in question were typical of its line of work, or perhaps even necessary to it, but the contractor would not need to engage in the practice repeatedly. This understanding of “regular” jibes with common usage: Amniocentesis is a “regular procedure” for pregnant women, even if most women experience it only once. And stated more generally, a practice may be “regular” if it recurs across persons, even if it never recurs within persons. The installation of equipment for melting and casting steel is common and necessary to the steel manufacturing business; thus, the majority is wrong to conclude that NAS did not contract for services that were a regular or recurrent part of its business.[1]
*713 In its analysis, the majority cites, and presumably takes guidance from the unpublished Kentucky case of Cain v. General Electric Co., 2003 WL 22976682, 2003 Ky.App. LEXIS 325, at *29, No.2002-CA-001843-MR 2003 (Ky.Ct.App. Dec. 19, 2003) (unpublished). That case is pending appeal before the Supreme Court of Kentucky (GE Co. v. Cain, 2005 Ky. Feb. 9, 2005) and comes with the proscription that it is not final and shall not be cited as authority in any courts of the Commonwealth of Kentucky. It also is distinguishable.
Cain essentially held that installation of plumbing, gas and water lines, piping, insulation, flooring, furnaces and machinery removal by various subcontractors were not regular or recurrent aspects of the appliance manufacturing business. The Cain court took issue with the trial court’s conclusion that because the work was “necessary to enable GE to manufacture its products” they were a regular or recurrent part of its work, pointing out as a logical extreme that the trial court’s statements may lead to illogical results such as applying worker’s compensation liability and the consequent immunity to employees of an independent accounting firm hired to audit a firm’s financial records. Id. at fn. 49. While the Supreme Court of Kentucky has the opportunity to more precisely delineate where the lines should be drawn in this analysis, it is doubtful that this is a case that lies near the margins. Installation of the steel melting furnace and performing related activities necessary for its commission and efficient operation is primary to the production of steel and the process of steel manufacturing. It is not merely tangential to the process as were the activities analyzed in Cain or that court’s accounting-firm hypothetical. As the majority notes, “NAS’s primary business line is steel production” and “the equipment was necessary to NAS’s business.” In Giles v. Ford Motor Co., 126 Fed.Appx. 293, 296 (6th Cir.2005) (Boggs, Martin, Weber) (per curiam) this court cited Cain for the limited proposition that “an activity must be entirely tangential to a company’s main business to fall outside the terms of [the Kentucky Workers’ Compensation Act]”. I can find no reasoned basis to determine that Smith’s activities at the time of his fatal accident were entirely tangential to NAS’s business of steel manufacturing or for retreating from this court’s prior reasoning on the subject.
Finally, I believe that the district court properly determined that Smith’s work at the time of the accident was not only a regular and recurrent part of NAS’s work, but it was also within the scope of the contractual relationship created between NAS and SMS Demag. As previously discussed in my analysis of SMS Demag’s immunity claim, the contract required SMS Demag to perform certain activities between the completion of the physical installation of the equipment and NAS’s provisional acceptance of it. NAS had not yet provisionally accepted the equipment, and there was no legitimate contention that the work Smith was performing at the time of his accident fell outside of NAS’s *714 contractual obligation to ramp up the equipment to full production before NAS’s provisional acceptance. Accordingly, whether the work Smith was doing at the time of the accident is characterized as maintenance or repair or troubleshooting or calibration or as a continuing aspect of the installation process, makes no difference. The work was clearly within the scope of the work that NAS contracted to SMS Demag and meets the requirements of K.R.S. § 342.690.[2]
Because I find no error in the district court’s conclusion that SMS Demag and NAS were “contractors” and entitled to immunity under the statute, I would affirm the court’s grant of summary judgment to those parties.

. A few of this Circuit’s district court judges have adopted the narrower view espoused by the majority that one-time events do not meet the statute’s definition of "regular or recurrent”. See, Sharp v. Ford Motor Co., 66 F.Supp.2d 867, 869 (W.D.K.y.1998). Even if I *713 regarded it as proper to take this narrow view in applying Kentucky law, however, I would nevertheless reach the same conclusion. As the district court noted in this case, the evidence shows that the accident occurred when Smith was servicing the electrode arm of the installed equipment after installation and before ramp-up. The district court found that the work Smith was performing at the time of the accident — replacing insulators on the equipment’s electrode arm — was akin to the maintenance work that was determined to be "regular or recurrent” in Granus. I see no fault in the district court’s logic and no record evidence to dispute the validity of its factual finding. It certainly should not matter to the analysis that this was the first time the electrode arm had to be serviced in this manner.

. Smith seems to accept that the task performed by the decedent at the time of her husband’s death was necessary to SMS Demag’s commissioning of the melt-shop equipment. Smith maintains, however, that SMS Demag’s post-installation duties were "onetime events," and thus could not constitute a "regular or recurrent" part of NAS’s business, even if they included some measure of “maintenance”. As explained below, the fact that a particular service is a "one-time event" for a particular business does not mean that it cannot constitute a "regular” part of that business. Moreover, Smith's focus — that the activity performed by her husband was a "one time event” focused on the fact that Artisan was required to perform these tasks on a onetime basis. The question, however, is whether that work is a regular or recurrent aspect of NAS’s business, not Artisan’s.