RENDERED:  JANUARY 16, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0017-MR

RONALD SATTENBERG, M.D.                                        APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE BRIAN C. EDWARDS, JUDGE
ACTION NO. 12-CI-003326


UNIVERSITY MEDICAL CENTER,
INC.; MICHAEL GOODE; AND
UNIVERSITY RADIOLOGICAL
ASSOCIATES, P.S.C.                                            APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND LAMBERT, JUDGES.

ACREE, JUDGE:  Dr. Ronald Sattenberg appeals the Jefferson Circuit Court's

grant of summary judgment in favor of Appellees University Medical Center, Inc.,

et al.  Finding no error, we affirm.

# PROCEDURAL BACKGROUND

On August 12, 2011, radiologist Dr. Sattenberg allegedly fell over exposed cords in the Department of Radiology at University Medical Center (UMC). As a result, he sustained severe back and head injuries, causing a traumatic brain injury, vision deficits, a ruptured lower back disc, and chronic pain.

At the time of his injuries, Dr. Sattenberg was dually employed by both University Radiological Associates (URA) and the University of Louisville (UofL).[1] Dr. Sattenberg's complaint, as amended, included a premises liability claim and named UMC, URA, UofL, and certain URA and UofL employees including Michael Goode (Appellees).

Dr. Sattenberg also pursued workers' compensation claims against both employers. UofL paid, and URA denied, his respective claims against them.

The trial court granted summary judgment for URA, which Dr. Sattenberg appealed to this Court. On February 17, 2017, we entered an Opinion reversing and remanding for a determination of whether "the undisputed evidence of record demonstrates that Sattenberg sustained his injuries in the course and scope of his employment with URA." *Sattenberg v. University Radiological Associates, P.S.C.*, No. 2016-CA-000053-MR, 2017 WL 652133, at *2 (Ky. App.

---

[1] UMC is a management company that operates as the lessee of the UofL Hospital. URA possesses and operates a private radiology practice within the premises.

Feb. 17, 2017). URA then filed a renewed motion for summary judgment, and Sattenberg filed a cross-motion for summary judgment. The Circuit Court denied both motions.

UMC also filed its own motion for summary judgment, arguing summary judgment was proper because it is entitled to exclusive remedy immunity via up-the-ladder provisions of the KWCA.[2] This, too, was denied.

On August 8, 2022, Appellees filed a renewed motion for summary judgment, which the Circuit Court granted. Sattenberg filed a motion to vacate the judgment and reconsider, arguing, among other things, that genuine issues of material fact exist as to whether Sattenberg's work at the time of injury was in the course and scope of working for URA. The trial court denied his motion, and this appeal follows.

## ANALYSIS

### I. Workers' compensation immunity bars claims against UMC, URA, and Goode.

The KWCA provides the exclusive remedy for employees seeking compensation from their employers for work-related injuries. To assert exclusive remedy immunity, a premises owner must "plead and prove the affirmative defense . . . with substantial evidence that a defendant was the injured worker's statutory

---

[2] Kentucky Workers' Compensation Act.

-3-

employer under a correct interpretation of KRS[3] 342.610(2)(b)." *General Electric Co. v. Cain*, 236 S.W.3d 579, 585 (Ky. 2007).

A party against which a worker makes a claim, but which is not the direct employer of the claimant, may claim up-the-ladder immunity by first presenting proof it secured workers' compensation coverage and, second, by proof it is a contractor as defined in KRS 342.610(2)(b). *Id.*

"A certification of coverage from the Department of Workers' Claims or an uncontroverted affidavit from the employer's insurer is *prima facie* proof that a company has secured payment of compensation." *Id.* at 605. On appeal, it is undisputed that URA proved its coverage when it filed a certificate of coverage in 2014. We reached the same conclusion in our previous opinion, holding "URA indisputably had secured workers' compensation insurance at the time of Sattenberg's injuries." *Sattenberg*, 2017 WL 652133, at *2. The first element is satisfied.

The second element requires more analysis. A party is a "contractor" under KRS 342.610(2)(b) if it "contracts with another . . . [t]o have work performed of a kind which is a regular or recurrent party of the work of the trade, business, occupation, or profession of such person[.]" KRS 342.610(2)(b). The term "regular" refers to work that is "customary, usual or normal." *Cain*, 236

---

[3] Kentucky Revised Statute.

S.W.3d at 586–87. The question turns on whether the work was "of a kind that the company would normally expect or be expected to perform with employees rather than outside contractors." *Id*. at 600. As to the work of the business, relevant factors include its nature, size, scope, and whether it is "equipped with the skilled manpower and tools to handle the task the independent contractor is hired to perform." *Id*. at 588. However, no one factor is dispositive. *Id*.

UMC contracted with both of Sattenberg's employers (URA and UofL) to perform radiology services. At the outset, we find persuasive value in the fact that Kentucky state regulations require all hospitals to offer radiology services, thereby indicating radiology services—and by extension, Sattenberg's work—are a "regular or recurrent" part of UMC's work. *See* 90 KAR[4] 20:016, Section 4(6) (requiring that a hospital "shall have" a "radiologist on at least a consulting basis to . . . interpret films"). However, to determine whether Sattenberg's radiology services fit within the context of KRS 342.610(2)(b), we must examine Kentucky case law.

Kentucky courts have routinely held that hiring independent contractors to provide services in a medical setting constitutes "regular or recurrent" work, resulting in exclusive remedy immunity for the hospital. The appellees first direct us to *Mullins-Smith v. Appalachian Regional Healthcare, Inc.*,

___

[4] Kentucky Administrative Regulation.

an unpublished case in which the plaintiff was an employee of Fresenius Medical Care, an entity that contracted with Appalachian Regional Healthcare, Inc. (ARH) to provide dialysis services to patients. No. 2011-CA-002225-MR, 2013 WL 375578 (Ky. App. Feb. 1, 2013). After being injured while working with a patient at ARH, the plaintiff filed a workers' compensation claim against Fresenius and a tort claim against ARH. This Court affirmed the trial court's grant of summary judgment for ARH on the basis that ARH fit the definition of KRS 342.610(2)(b), or that it was the "up-the-ladder" employer entitled to exclusive remedy immunity. Specifically, we stated "the rendering of medical treatment would logically seem to be both regular *and* recurrent activity for a hospital." *Id.* at *2 (emphasis original). Sattenberg's only argument against application of *Mullins-Smith* to the instant case is that it is "an unpublished opinion . . . that no state or federal court cites to for support or authority in the 11 years since its rendering." (Reply Br. at 9). While true, Sattenberg does not offer any alternative binding authority on this issue. We are entitled to consider *Mullins-Smith* for its persuasive value pursuant to RAP[5] 41, and to evince this Court's consistency regardless of an opinion's precedential value.

The same employment structure was at issue in *Kubas v. Klondike Manor, LLC*, No. CIV A 307-CV-148-H, 2008 WL 243947 (W.D. Ky. Jan. 25,

---

[5] Kentucky Rules of Appellate Procedure.

2008).  The plaintiff was an employee of SharpCare, an entity that contracted with Klondike Manor to provide wound care at the facility.  After being injured at work, she filed a workers' compensation claim against SharpCare and a tort claim against Klondike Manor.  Applying *Cain*, the court found that the work performed "falls squarely within the definition of 'regular or recurrent' aspects of operating a skilled nursing facility," and applied exclusive remedy immunity to Klondike Manor.  *Id.* at *2.

Sattenberg's primary argument against classifying the work as "regular and recurrent" is that in *Kubas*, "the contractor at issue could demonstrate that its staff possessed the skilled manpower through its own employees to perform the medical care at issue, something Appellees admit they cannot do."  (Reply Br. at 9; *see also* Appellant Br. at 19-23).  Paradoxically for Sattenberg, this is the precise argument *Kubas* warns against:

> Nevertheless, Plaintiff considers a single factor mentioned in *Cain* to be dispositive here. She argues that by definition, because Defendant contracted with SharpCare for wound care services, Defendant was obviously not "equipped with the skilled manpower and tools to handle the task the independent contractor is hired to perform." This observation seems to miss the proverbial forest for the trees.

*Kubas*, 2008 WL 243947, at *3.  This argument was rejected in *Kubas*: "Defendant contracted with Plaintiff precisely because wound care was such a regular and recurrent aspect of Defendant's business."  *Id*. (emphasis in original).  Here, the

-7-

record demonstrates that UMC contracted with URA *because* radiology services were such a regular *and* recurrent aspect of UMC's business. That UMC did not actually perform such functions itself "makes no difference under Kentucky law." *Sharp v. Ford Motor Co.*, 66 F. Supp. 2d 867, 870 (W.D. Ky. 1998).

We reiterate that in no uncertain terms, *Cain* states "[t]he test is relative, not absolute." 236 S.W.3d at 588. We find UMC utilized independent contractor physicians to provide radiology services to meet the needs of its patients. On balance, URA's provision of radiology services was a regular and recurrent part of UMC's work, which was statutorily necessary for hospital operations.

We must finally consider whether Sattenberg's injury occurred within the course and scope of his employment with URA. As we previously stated, "only injuries incurred by employees which arise out of the course and scope of their employment are compensable by workers' compensation benefits to the exclusion of other remedies." *Sattenberg*, 2017 WL 652133, at *4. Ample evidence has been provided after remand that supports the notion he was injured in the course and scope of his employment with URA.

Sattenberg initially testified in this matter that as an employee of both URA and UofL, he viewed his employment with them as "one in the same":

> Q: And on a daily basis when you went to work you went to work for both UofL and URA?

A: That's how I looked at it.

(R. at 1053–54, Sattenberg Dep. I at 57:2-3). He "viewed [his] job as basically cohesive between UofL and URA." (*Id*. at 61:8-11). In fact, the former president of URA testified that "a UofL faculty member can't practice radiology without a URA employment arrangement." (R. at 2860, Postel Dep. I at 68:2-3). He subsequently elaborated as follows:

> The primary element for all radiologists is the University of Louisville. And in order to conduct clinical activity, they also had to get a URA paycheck, because URA was the billing operation . . . in order to work for URA you had to have a, as a physician, you had to have a UofL faculty appointment. And if one no longer held a UofL faculty appointment, they would no longer work for URA.

(R. at 2134, Postel Dep. II at 27:8-11). However, to the extent the nuances of his duties could be differentiated, Sattenberg explained he viewed his UofL position as a professorship that included teaching medical students and residents, while his URA position was "private practice" work or "clinical neuroradiology" which involved interpreting studies.

Q: [W]hat were you doing [at the time of your fall]?

A: My job. I mean I was working.

Q: Were you walking? Obviously you were walking, but where were you coming from and where were you going to?

-9-

A:    Oh, okay.  So how do I explain.  The Radiology Department is within the hospital.  It's a separate territory.  And then the neuroradiology reading room was like you go into a corridor and then into the, so I was about the exit the department area of the hospital and heading towards the neuroradiology reading room.

Q:    Okay.  And where did you fall?

A:    On my way to that exit door within what I call the Radiology Department.

Q:    What were you headed to the reading room to do?

A:    Interpret studies.

(*Id*. at 70:1-23).  He repeated this testimony in substance in a subsequent deposition in the underlying litigation.  (R. at 2866, Sattenberg Dep. II at 219:1-21).  If any doubt remains, his employment contract with URA states his employment for the entity included the practice of diagnostic neuroradiology at the times and locations as URA directed, including his interpretation of studies at the UofL hospital.

It is clear Sattenberg was engaged in activity within the course and scope of his employment duties for URA.  And the nature of such radiology services is certainly a "regular and recurrent" part of operating a hospital.  Accordingly, the trial court did not err in granting summary judgment for the appellees.

-10-

Having found exclusive remedy immunity to apply to URA and UMC, we find the same for Goode. "The exemption from liability given an employer by this section" also applies to "all employees . . . of the employer" unless the alleged injury was caused by the employee's "willful and unprovoked physical aggression." KRS 342.690(1). Goode was an employee of UMC while Sattenberg was injured. There is nothing in the record to indicate Goode engaged in any type of willful and unprovoked physical aggression toward Sattenberg. Goode is therefore entitled to exclusive remedy immunity along with UMC and URA.

## II.    **Judicial estoppel does not apply to URA.**

Sattenberg also argues that judicial estoppel applies to Appellees' claim of exclusive remedy immunity because URA's current position is different than in its denial of his workers' compensation claim.

Judicial estoppel prohibits a party from taking inconsistent positions in judicial proceedings. *Hisle v. Lexington-Fayette Urban Gov't*, 258 S.W.3d 422, 434 (Ky. App. 2008). There is no set formula for this principle. Instead, courts consider several factors such as:

> (1) whether the party's later position is clearly inconsistent with its earlier position;
>
> (2) whether the party succeeded in persuading a court to accept the earlier position; and

(3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 435–36. Appellees correctly note that judicial estoppel does not apply here. URA pleaded alternatively in the workers' compensation action that Sattenberg was not working within the scope of his employment with URA:

> While this claim is being denied as not occurring in the course and scope of [Sattenberg's] employment for University Radiological Associates . . . , [i]n the alternative, University Radiological Associates asserts apportionment between University of Louisville and University Radiological Associates as an issue that needs to be decided . . . . Discovery is ongoing, but it appears that [Sattenberg] was not working in the course and scope of his employment for University Radiological Associates at the time of the alleged injury.

(R. at 220). Regardless, even if URA had taken such a position without qualifying it as an alternative pleading, an analysis of the above factors does not give rise to judicial estoppel.

With respect to the first factor, URA's current position is not "clearly inconsistent with its earlier position[.]" *Hisle*, 258 S.W.3d at 434. "Pleading in the alternative is of course a standard legal practice, and absent extraordinary circumstances such alternative pleading is not binding as a judicial admission."

-12-

*Huddleston v. Hughes*, 843 S.W.2d 901, 904–05 (Ky. App. 1992). URA merely pleaded in the alternative, a standard, permissible legal tactic.

The second factor yields a negative result as well. URA did not convince the Department of Workers' Claims to accept its position that Sattenberg was not injured in the course and scope of his employment with URA. Sattenberg informs us that after taking the earlier position, URA was dismissed from the workers' compensation claim. While true, review of the record indicates this dismissal was the result of a proposed settlement agreement that was approved by the administrative law judge only after "conducting discussions with the parties." (Appellant's Br. Appx. 24). This settlement agreement and thereby URA's dismissal was approved "[a]s a result of that lump sum agreement" and nothing indicates it was approved in any part due to URA's position regarding course and scope of employment. (Appellant's Br. Appx. 25).

The third factor is even less convincing. Sattenberg would not suffer an unfair detriment and URA would not obtain an unfair advantage by taking its current position. As described above, Sattenberg settled with UofL and dismissed URA from the workers' compensation case. In so doing, URA settled with UofL for URA's portion of the settlement agreement between Sattenberg and UofL. (R. at 2651–54). URA effectively satisfied the claim for workers' compensation benefits to Sattenberg. The only unfair advantage to be gained in the context of

this factor would be that afforded Sattenberg, should URA be required to satisfy the claim *again*, after he already received full recompense.

We are further troubled by the fact that Sattenberg joined URA as a party to the workers' compensation claim and now seeks to assert a different theory of the scope of his employment at the time of injury, that he "did not work in the scope of URA's employment at the time of the trip and fall." (Appellant's Br. at 25). As a whole, the record before us tells the story of discovery-intensive litigation which spanned many years. Both parties made strategic choices at the beginning of litigation—prior to the completion of discovery—that evolved once a more robust and replete record had been developed. URA pleaded an alternative defense, qualifying its statement with the fact that discovery was ongoing. The trial court correctly determined, based on a more thorough record on remand, that the injuries were caused in the course and scope of Sattenberg's employment with URA. The initial alternative pleading in the administrative case does not estop URA from maintaining its current and *correct* position that exclusive remedy immunity applies.

## CONCLUSION

Based on the foregoing, we find no error in the Jefferson Circuit Court's granting of summary judgment to defendants. AFFIRMED.

ALL CONCUR.

-14-

BRIEFS FOR APPELLANT:            BRIEF FOR APPELLEES:

William D. Nefzger             Clay M. Stevens
Patrick E. Markey             Max E. Cosby
Louisville, Kentucky             Louisville, Kentucky